# IN THE SUPREME COURT OF IOWA

No. 12–2310

Filed June 6, 2014

**IN THE INTEREST OF A.J.M.,**

Minor Child.

**STATE OF IOWA,**

Appellant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Pottawattamie County, Charles D. Fagan, Judge.

The State appeals a decision by the juvenile court to waive sex offender registration. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED IN PART AND REVERSED IN PART; CASE REMANDED FOR FURTHER PROCEEDINGS.**

Thomas J. Miller, Attorney General, Bruce L. Kempkes, Assistant Attorney General, Matthew D. Wilber, County Attorney, and Dawn M. Landon, Assistant County Attorney, for appellant.

Roberta J. Penning Megel, State Public Defender, Council Bluffs, for minor child.

**CADY, Chief Justice.**

In this appeal, we consider the authority of the juvenile court to waive the requirement for a person adjudicated delinquent as a juvenile for an offense covered under the sex offender registry statute to register as a sex offender. The juvenile court waived the registration requirement for the sex offender in this case for a variety of reasons, but without finding that the juvenile was not likely to reoffend. Following an appeal by the State, we transferred the case to the court of appeals. It reversed the decision of the juvenile court and directed that the person register as a sex offender. On further review, we vacate the decision of the court of appeals, reverse the decision of the juvenile court, and remand the case to the juvenile court to decide the waiver of registration based on the standard articulated in this opinion. We otherwise affirm the decision of the juvenile court.

## I. Background Facts and Proceedings.

A.J.M. was sixteen years old when she was adjudicated delinquent by the juvenile court in April 2011. The delinquency was based on the crime of sexual abuse in the second degree. A.J.M. admitted she engaged in various and repeated acts of sexual abuse with her younger sister and brother over the course of approximately two years. The abuse began in January 2009 when A.J.M. was fourteen years of age and her siblings were four and two years of age. Pursuant to a dispositional order entered in conjunction with the adjudication, the juvenile court transferred custody of A.J.M. to the department of human services for placement at the State Training School for Girls in Toledo until she received maximum benefits from the placement.

Prior to the delinquency proceedings, A.J.M. lived with her mother and three siblings in Council Bluffs. A.J.M. did not know her father, and

all her siblings had different fathers. Her mother worked as an insurance agent and tax preparer. A.J.M. was a junior in high school at the time of the delinquency proceedings. She did well in school academically and was active in sports and dance. By the time she turned fourteen years of age, she had become sexually active. The sexual abuse of her siblings began after the mother discovered A.J.M. was pregnant and began to place restrictions on her. The pregnancy ended in a miscarriage a few weeks later.

A report prepared by a juvenile court officer prior to the dispositional hearing recommended that the court wait to decide whether A.J.M. should be required to register as a sex offender following her discharge until she successfully completed sexual offender treatment. The predispositional report also indicated there were no residential sex offender treatment programs for girls in Iowa. Another report indicated A.J.M. suffered from Oppositional Defiant Disorder, Dysthymic Disorder, Generalized Anxiety Disorder, and Impulse Control Disorder.

A.J.M. entered the training school in May 2011. A treatment plan was developed by staff at the training school. The primary goals of the plan were for A.J.M. to accept directives, control her thoughts and actions, integrate values into her life, and improve her overall wellness.

A.J.M. did well in her educational classes at the training school, but otherwise struggled to meet the goals of the treatment plan. A psychological evaluation of A.J.M. in July 2011 indicated she was very impulsive and had almost no control over her sexual urges. She was also seen as manipulative and unable to see how her actions affected others. A case-review report by the treatment team at the training school in February 2012 indicated A.J.M. was failing to meet the expectations of her treatment plan. The treatment team recommended at that time

A.J.M. "be placed in the sexual offender registry due to her lack of effort in her program and lack of remorse for her actions." At the same time, a psychologist employed by the training school authored a separate report to express his "deep concern" over A.J.M. and her lack of progress after nearly ten months in the training school. He recommended A.J.M. be placed in the sexual offender registry "for her safety and safety of others." He also indicated she needed to be placed in a long-term sexual offender treatment program.

A.J.M. graduated from high school while in the training school, but was viewed by the psychologist as being at risk to reoffend. She admitted to making plans to engage in sexual activities with her peers in a bathroom at the training school and continued to have problems controlling her sexual thoughts and urges. In a discharge summary report in October 2012, the treatment team indicated A.J.M. had learned how to be pleasant and charming on the surface, which they believed made her very dangerous to society. The team viewed her as intelligent, but felt she had taken little or no responsibility for her behavior and lacked remorse and empathy for others. The team recommended she be placed on the sexual offender registry due to her lack of effort in her treatment program and lack of remorse for her actions.

The juvenile court officer who had been assigned to A.J.M. since her placement at the training school submitted a report in November 2012. He acknowledged A.J.M. maintained inappropriate thoughts about children and females, but felt A.J.M. would be homeless if she were required to register as a sex offender.

The final review hearing was held in November 2012. The juvenile court officer assigned to A.J.M. testified that there would be no area in Council Bluffs for A.J.M. to live if she were required to register as a sex

offender. He was also critical of the absence of a sex offender treatment program for girls in Iowa and felt the State failed A.J.M. by failing to provide her with an appropriate treatment program. He indicated that child sex offender treatment programs have a very high rate of success. On the other hand, the State submitted expert opinions and other evidence that A.J.M. was at risk to reoffend upon discharge. There was also evidence of personality traits that engendered concerns about the dangers of reoffending. There was no dispute that the treatment provided to her had failed to achieve the desired modification of behavior.

Following the hearing, the juvenile court terminated its jurisdiction and discharged A.J.M. It also waived the requirement for her to register as a sex offender. The court waived the registry requirement based on its conclusion that the treatment offered to A.J.M. at the training school was inadequate, and the registration requirement would only compound the State's failure to properly treat her by making her life more difficult upon discharge. The court also found A.J.M. was aware of the consequences of reoffending and wanted to pursue further treatment upon release. The court believed A.J.M. did the best she was able to do under the circumstances, and her failure to overcome her problems was the fault of the State.

The State appealed. It claims the juvenile court abused its discretion by waiving the requirement for A.J.M. to register as a sex offender. We transferred the case to the court of appeals. It reversed the order of the juvenile court and directed that A.J.M. be required to register as a sex offender. We granted further review.

## II. Standard of Review.

We normally review proceedings in juvenile court de novo. *In re J.D.F.,* 553 N.W.2d 585, 587 (Iowa 1996). When the issue on appeal

relates to statutory discretion exercised by the juvenile court, however, we review the evidence de novo to determine whether the discretion was abused. *In re C.W.R.*, 518 N.W.2d 780, 783 (Iowa 1994). Additionally, when the issue requires the interpretation of a statute, the standard of review is for correction of legal errors. *In re G.J.A.*, 547 N.W.2d 3, 5 (Iowa 1996).

### III. Discussion.

**A. Sex Offender Registry.** Our legislature has enacted a comprehensive sex offender registry. *See* Iowa Code ch. 692A (2011). The statute requires a sex offender who resides in Iowa, or is employed or attends school in Iowa, to register as a sex offender. *Id.* § 692A.103(1). The registration requirement applies to juveniles who were "adjudicated delinquent for an offense that requires registration" as well as juveniles prosecuted as adults for a sex offense that requires registration. *See id.* § 692A.103(1), (3). For juveniles who were adjudicated delinquent for a sex offense that requires registration, the registration begins once the juvenile is released from placement, begins attending school, or when adjudicated delinquent under an order that does not provide for placement. *Id.* § 692A.103(1)(*d*)–(*f*).

The sex offender registry statute requires the department of public safety to use the registry to provide relevant information to the public about sex offenders who have been placed on probation or parole or otherwise released from incarceration or a placement at a juvenile facility. *See id.* §§ 692A.103(1)–(2), .121(1). This information is primarily distributed to the public through an internet site. *Id.* § 692A.121(1). Among other features, the comprehensive statute also excludes sex offenders from entering or residing in certain areas or zones and prohibits sex offenders from engaging in certain employment-related

activities. *Id.* §§ 692A.113, .114, .115. The paramount purpose of the sex offender registry requirement is to protect society from sex offenders after they have been released back into society following the disposition of their case. *In re S.M.M.,* 558 N.W.2d 405, 408 (Iowa 1997). This purpose includes protection of the public from juvenile sex offenders who have been discharged by a final dispositional order. *Id.*

**B. Waiver of Registration.** The sex offender registry law presumes all sex offenders must register. *Id.* at 407. An exception, however, exists that permits the registration requirement to be waived for eligible juveniles who were adjudicated delinquent in juvenile court for an offense that requires registration. Iowa Code § 692A.103(3); *In re S.M.M.,* 558 N.W.2d at 406 (indicating the burden of proof is on the juvenile to establish the "exception"). Juveniles are eligible for waiver under this provision if they were less than fourteen years of age at the time of the offense or were not adjudicated for a sex offense "committed by force or the threat of serious violence, by rendering the victim unconscious, or by involuntarily drugging the victim." *See* Iowa Code § 692A.103(4). Thus, waiver is not available to older juveniles who commit sex offenses under aggravated circumstances or juveniles who were prosecuted as adults. *See id.* There is no companion waiver provision for adult sex offenders, although courts may modify the registry requirements for adults under certain circumstances. *See id.* § 692A.128. *See generally State v. Iowa Dist. Ct.,* 843 N.W.2d 76 (Iowa 2014) (discussing an adult sex offender's opportunity to seek modification under section 692A.128(6)).

A juvenile court is authorized to waive the registration requirements for eligible juveniles when it "finds that the person should not be required to register." Iowa Code § 692A.103(3). This waiver

provision gives the juvenile court discretion to excuse an eligible juvenile from the registration requirement. *See In re S.M.M.*, 558 N.W.2d at 407. The discretion, however, "is not unbridled." *Id.* Not only is the waiver limited to eligible juveniles, but the juvenile court must *find* registration should be excused. *See* Iowa Code § 692A.103(3).

The waiver provision does not identify any specific guidelines for juvenile courts to apply in exercising discretion to waive sex offender registration. *See id.*; *In re S.M.M.*, 558 N.W.2d at 407. Nevertheless, the absence of statutory guidelines would not permit the discretion to be based on an erroneous interpretation or application of the statute. *See In re Estate of Bockwoldt*, 814 N.W.2d 215, 222 (Iowa 2012) (noting an abuse of discretion occurs when the exercise of discretion is based on an erroneous application of the law). Instead, the statute gives the juvenile court authority to choose between registration and waiver of registration, but the ground or reason for the choice must be based on a proper interpretation of the statute. *See In re S.M.M.*, 558 N.W.2d at 407 (indicating the nature of the discretion involved under the statute deals with a choice between alternatives). Thus, we turn to examine the purpose and language of the statute to determine what the juvenile court must consider in exercising its discretion to waive registration.

**C. Interpretation of Statute.** We interpret a statute by considering all parts of the enactment. *Gen. Elec. Co. v. State Bd. of Tax Review*, 492 N.W.2d 417, 420 (Iowa 1992). Our goal is to construe the statute under consideration "in light of the legislative purpose." *State v. Erbe*, 519 N.W.2d 812, 815 (Iowa 1994).

The purpose of the waiver of registration provision for eligible juvenile sex offenders was underscored by the evidence in the waiver hearing in this case that juvenile sex offenders who are provided

treatment typically are not at risk to reoffend. Research has confirmed that juvenile sex offenders generally "are less likely to re-offend than adults, especially when they receive appropriate treatment." Fed. Advisory Comm. on Juvenile Justice, *Annual Recommendations Report to the President and Congress of the United States* 7–8 (2007), *available at* www.facjj.org/annual/reports/ccFACJJ%20Report%20508.pdf. Most juveniles who become involved in illegal sexual behavior "are not sexual predators and do not meet the accepted criteria for pedophilia." *Id.*; *see also* Britney M. Bowater, *Adam Walsh Child Protection and Safety Act of 2006: Is There a Better Way to Tailor the Sentences of Juvenile Sex Offenders?*, 57 Cath. U. L. Rev. 817, 840 (2008) ("[M]any studies indicate that juvenile sex offenders have a lower recidivism rate than adult sex offenders."). It is reasonable to conclude our legislature would have considered this research as the purpose for enacting the waiver provision. While sex offender registration exists to protect the public from reoffenders, protection can also be achieved by the lower risk of recidivism for juveniles. Thus, the purpose of the statutory waiver of registration is to relieve juveniles who are not likely to reoffend of the requirement to register as a sex offender.

This purpose is confirmed by the broader statutory scheme of not only permitting waiver of registration for juveniles who are not likely to reoffend, but also allowing registration to be modified or suspended for eligible juveniles who were not granted a waiver. *See* Iowa Code § 692A.103(5). In contrast with the waiver provision under section 692A.103(3), when the legislature permits the juvenile court to modify or suspend registration, section 692A.103(5) requires the modification or suspension to be based on "good cause." *Id.* Additionally, the juvenile court must make "written findings," state "the reason" for the

modification or suspension, and "include appropriate restrictions upon the juvenile to protect the public." *Id.* § 692A.103(5)(*d*). This contrast reveals the legislature understood that waiver would be reserved for juveniles within the norm of youthful offenders identified by the research who are unlikely to reoffend, while juveniles who subsequently seek to modify or suspend registration need restrictions to protect the public as a condition to the modification or suspensions of registration because they fell outside the norm of juveniles unlikely to reoffend.

We observe there was also evidence at the waiver hearing in this case that juveniles constrained by the requirements of registration suffer a variety of adverse consequences. This evidence revealed juveniles who must register may be unable to live at home or may otherwise struggle to find suitable housing. They also can experience difficulty in pursuing educational and employment opportunities.

However, this evidence does not necessarily describe a ground or reason for granting a waiver of registration as much as it explains the unfairness of registration for juveniles who are not likely to reoffend. The adverse consequences of registration apply to all offenders. Furthermore, not all juveniles are eligible under the statute for waiver or modification of registration. Thus, if the consequences of registration were a reason to waive registration, registration would not exist.

Accordingly, the legal standard for waiver under the statute is guided by public protection. Waiver is available when the juvenile court "finds" in its discretion that the eligible juvenile is not likely to reoffend. If an eligible juvenile is not initially granted a waiver under this standard, the juvenile may then move to modify or suspend to obtain relief from the consequences of registration. *See id.* 692A.103(5). In this way, juveniles

who must register can still minimize or elevate some of the consequences of registration.

In applying these standards, it is important to recognize it is possible for any juvenile sex offender to reoffend. Yet, the mere possibility of reoffending does not preclude waiver or subsequent modification. The standard intended by our legislature is built on a likelihood of reoffending. This means the risk of reoffending would be "probable or reasonably to be expected." *Cf. In re Foster*, 426 N.W.2d 374, 377 (Iowa 1988) (considering the word "likely" in a statute to mean "probable or reasonably to be expected"). While the standard is not exact, neither is the protection registration affords the public. Registration does not eliminate the risk for an offender to reoffend. There is much at stake for both the juvenile and the public in the analysis, which explains the discretion given to juvenile courts to make the decision by balancing all considerations.

The standard we establish is consistent with fundamental principles of statutory construction. We recognize a statute must be interpreted consistent with its predominant or cardinal purpose. *Allen v. Iowa Dist. Ct.*, 582 N.W.2d 506, 509 (Iowa 1998). Moreover, we have recognized in the past that the waiver contemplated by section 692A.103(3) is essentially a statutory exception, *In re S.M.M.*, 558 N.W.2d at 406, and the waiver clause must accordingly be read to give effect to the legislative intent underlying the general provision. *Cf. Heiliger v. City of Sheldon*, 236 Iowa 146, 153–54, 18 N.W.2d 182, 187 (1945) ("[A] statutory exception must be strictly construed so as not to encroach unduly upon the general statutory provision to which it is an exception."). Exceptions in a statute are construed in a manner "consistent with the manifest reason and purpose of the law," *Hubner v.*

*Spring Valley Equestrian Ctr.*, 1 A.3d 618, 624 (N.J. 2010), and this waiver should as well. Finally, we have stated chapter 692A "may be fairly characterized as remedial." *State v. Pickens*, 558 N.W.2d 396, 400 (Iowa 1997). In that regard, we note that to extend an exemption beyond the "terms and spirit" of a remedial statute is "to abuse the interpretive process." *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493, 65 S. Ct. 807, 808, 89 L. Ed. 1095, 1099 (1945).

**D. Exercise of Discretion.** The juvenile court has discretion to waive registration because the decision in each case rests with the particular circumstances of each case. Yet, the discretion must be exercised by applying the proper legal standard. *See Walters v. Herrick*, 351 N.W.2d 794, 796 (Iowa 1984) ("When an incorrect standard is applied we remand for new findings and application of the correct standard.")); *see also State v. Formaro*, 638 N.W.2d 720, 725 (Iowa 2002) (explaining the role of discretion). In particular, discretion to waive may not be exercised in a way that would undermine the public protection provided by the statutory scheme for registration.

In the case, the waiver statute only permits waiver when the juvenile court "finds" the eligible juvenile should not be required to register. Iowa Code § 692A.103(3). To insure the discretion of the juvenile court reflects the purpose of the statute, the *finding* required to be made by the court must include a finding that waiver of the requirement to register would satisfy this purpose.

**E. Review of Discretion.** "A court abuses its discretion when its ruling is based on grounds that are unreasonable or untenable." *In re Trust No. T–1 of Trimble*, 826 N.W.2d 474, 482 (Iowa 2013). "A ruling is clearly unreasonable or untenable when it is 'not supported by substantial evidence or when it is based on an erroneous application of

the law.' " *In re Marriage of Kimbro*, 826 N.W.2d 696, 698–99 (Iowa 2013) (quoting *In re Marriage of Schenkelberg*, 824 N.W.2d 481, 484 (Iowa 2012)).

In this case, the juvenile court did not make a specific finding that A.J.M. was not likely to reoffend in granting the waiver of registration. Instead, the decision to waive registration merged the question of "waiver" with "modification or suspension." Under the statute, these remedies present distinct questions. *See* Iowa Code § 692A.103(3), (5). The first question is whether the juvenile is likely to reoffend; if not, registration is waived, and the matter is ended. *See id.* § 692A.103(3). If the court is unable to make the required finding for waiver, the juvenile may then ask the court to determine whether there is "good cause" to modify or suspend the registration requirement. *See id.* § 692A.103(5). The modification or suspension question must be based upon "good cause" and is a separate issue from waiver. *See id.* At the modification or suspension hearing, factors in addition to the likelihood of reoffending become relevant. In other words, the variety of factors identified by the juvenile court at the waiver hearing in this case would be relevant at a modification or suspension of registration hearing.

Without the requisite finding in this case that A.J.M. was not likely to reoffend, we are unable to determine if the juvenile court abused its discretion by waiving registration for reasons unrelated to the likelihood to reoffend. Not only will this required finding permit proper review of the exercise of discretion to waive registration, but the requirement for findings dedicated to the focal point of the waiver provision will promote the sound exercise of discretion.

The absence of the finding needed in this case to support waiver of registration does not allow us to determine if the juvenile court properly

exercised its discretion. Moreover, while there was evidence in the record that A.J.M. was at risk to reoffend, there was also evidence to the contrary. Thus, we cannot conclude the juvenile court was required, in the exercise of its discretion, to deny waiver of registration.

**IV. Conclusion.**

We conclude the record does not allow us to properly review the exercise of discretion by the juvenile court to waive the requirement for A.J.M. to register as a sex offender. We remand the case for the juvenile court to consider the waiver of registration by exercising its discretion under the standard articulated in this opinion. We otherwise affirm the decision of the juvenile court to discharge A.J.M.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED IN PART AND REVERSED IN PART; CASE REMANDED FOR FURTHER PROCEEDINGS.**

All justices concur except Zager and Waterman, JJ., who dissent.

**ZAGER, Justice (dissenting).**

I respectfully dissent. Not only do I think the district court failed to fully address the public protection purpose of the statute, it also failed to fully and adequately address the specific facts regarding A.J.M. herself. The district court focused, unnecessarily in my opinion, on the alleged failure of the state training school to offer appropriate sex offender treatment for girls and on the possible consequences of where A.J.M. might be able to live.

Although I find the majority's interpretation of Iowa Code section 692A.103(3) (2011) reasonable, I disagree that we must remand this case because the record does not allow us to properly review the district court's exercise of discretion. We must keep in mind we review the record de novo to determine whether the district court abused its discretion. *See In re C.W.R.*, 518 N.W.2d 780, 783 (Iowa 1994). We typically remand cases in which the factual record is insufficiently developed for resolution on appeal. *See, e.g., State v. Hoeck*, 843 N.W.2d 67, 71–72 (Iowa 2014) (explaining the need for remand in light of insufficient factual development and remanding case to the district court). In contrast, when vested with de novo review authority and confronted with a complete record, we have resolved the issue before us without remanding, even when the case required us to consider a district court's interpretation of a statute. *See, e.g., In re Estate of Bockwoldt*, 814 N.W.2d 215, 228–29 (Iowa 2012) (concluding a district court did not abuse its discretion when interpreting a statute and awarding attorney fees, and finding upon de novo review attorney's request for fees complied with the applicable probate rule); *see also State v. Brooks*, 760 N.W.2d 197, 203–04 (Iowa 2009) (concluding in an appeal challenging

the validity of a search that remand was unnecessary when the record was complete). On remand of this case, the district court will not accept new testimony or evidence. Thus, the record the district court examines upon remand will be the same as the record now before this court. Therefore, it is not necessary to remand this case. Rather, in applying the standard articulated by the majority to the facts of this case, then considering the record as a whole, and in our de novo review, I would conclude the district court abused its discretion in not requiring A.J.M. to register as a sex offender.

In our de novo review, we need to focus on what the record shows with regard to A.J.M. and her need to register as a sex offender. In doing so, we must keep a couple of things in mind. First, as the majority recognizes, the Iowa sex offender law presumes that all offenders, including juveniles, are required to register. *See In re S.M.M.*, 558 N.W.2d 405, 407 (Iowa 1997). Second, and equally important, the burden is on A.J.M. to establish she is entitled to a waiver from the registration requirement. *See id.* at 406. It is clear on this record A.J.M. has failed to overcome this presumption or to meet her burden to establish she is entitled to a waiver of the registration requirement.

The district court in its order stated that it was "aware that the recidivism rate for children is extremely low with less than 97% reoffending if properly treated." While the record discloses the source of this statistic, it certainly does not apply to A.J.M. In his report dated May 24, 2012, Dr. David Barche, A.J.M.'s treating psychologist, stated she continues to be at "high risk for re-offending and her progress remains to be slow." At that time, A.J.M. was continuing to have "a serious problem with controlling her sexual urges" and was "having a

hard time with understanding as to why she should not engage in sexual activity with others against their will."

A week before A.J.M. turned eighteen (July 20, 2012), she was asked if she thought she was ready to leave, and if she did leave, whether she would be able to stop sexually offending. A.J.M. responded "that she did not believe she could and she was not ready." Staff believed at this time A.J.M. "need[ed] to be placed on the sex offender registry."

In the case review dated August 8, 2012, it is noted that A.J.M. does not follow through with assignments by completing her sex offending worksheets honestly. It notes that A.J.M. struggles with this, "as she does not want to follow through with assignments given to her by the adults in the program or anyone in a position of authority." A.J.M. "does not like to have feedback from some of the staff working with her; she would rather avoid [the assignments] or make up excuses about why she does not follow through." Overall, A.J.M. did not complete the sex offender treatment assignments provided to her by Dr. Barche and the Arnold treatment team.

In his psychological evaluation updated August 31, 2012, Dr. Barche noted that A.J.M. "presented with a consistent lack of compliance, dishonesty, and numerous attempts of making herself look like she is being victimized by being placed in a residential treatment facility." When confronted with her lack of honesty, the evaluation continues, A.J.M. "is quick to blame others . . . for her actions." Dr. Barche notes that in her present sex offender assignment work A.J.M. "continues stating that if given a chance she would offend again, and that this time she would be smarter about making sure that her victims would not talk." A.J.M. was "asked to complete two different sets of curriculum designed for individuals struggling with control of sexual

impulses and empathy." However, A.J.M.'s "involvement" in those activities was "superficial and full of numerous maneuvers which purpose was to avoid addressing her issues."

Based on psychological testing done near that same time, her diagnostic impressions included "AXIS I V61.21 Sexual Abuse of a Child – perpetrator" and "AXIS II 301.7 Antisocial Personality Disorder." Some of Dr. Barche's recommendations at that time were as follows:

> Based on the current presentation, and the fact that [A.J.M.] continues to remain at high risk of reoffending it is recommended for [A.J.M.] to be placed on the Sexual Offender Registry prior to being released to the community. It is also critical that whenever [A.J.M.] will be released back to the community in addition to the registration on the Sexual Offender Registry she will be also asked to complete sexual offender treatment program on the outpatient basis.

> Despite [our] numerous efforts, [A.J.M.] continues to reject help offered to her. Treatment team at the Iowa Juvenile Home remains committed to helping [A.J.M.].

Finally, in the discharge summary dated August 29, 2012, the same pattern of blaming others emerges for A.J.M.: A.J.M. "continues to avoid being honest about herself and her problems"; she believes she can manipulate others to get what she wants; she fails to follow through with treatment protocols provided to her; she "continues to admit that she has urges and fantasies about other females in the program." The last paragraph of her discharge summary discloses a particularly grim picture of A.J.M., her future likelihood to reoffend, and her need to be placed on the sexual offender registry:

> To meet [A.J.M.] or to sit and talk with her, one would have no idea how deviant her thought processes are. She has learned very well what she should do or say in any given situation and can be quite pleasant and charming. It is this facade that also makes her very dangerous to society. Dr. Barche and the Arnold Cottage Treatment Team are recommending that [A.J.M.] be placed on the Sex Offender Registry due to the lack of effort in her program and lack of

remorse for her actions. We would further recommend continued court supervision and continuation in community-based sex offender programming.

The record in this case is replete with additional facts and progress notes from staff not included here. What the record does demonstrate is that while there may not have been a formal sex offender treatment program geared particularly towards young females, the psychologist and staff worked closely with A.J.M. and developed several sex offender treatment programs specifically designed to meet her needs. All efforts to help A.J.M failed, not because of the lack of programming or dedication by school staff and the psychologist, but because of the total lack of effort expended by A.J.M. to recognize her serious sexual issues and work towards resolving them. Clearly, with this well documented record, and even applying the standard now required by the majority, A.J.M. was not a serious candidate to be waived from the requirements of registering as a sex offender. The district court abused its discretion in waiving the registration requirement, as its decision cannot be supported by any substantial evidence in this record. I would reverse the decision of the district court and remand to the district court for entry of an order requiring that A.J.M. register as a sexual offender.

Waterman, J., joins this dissent.