# IN THE COURT OF APPEALS OF IOWA

No. 14-0705
Filed February 11, 2015

**IN THE INTEREST OF D.H.,**
   **Minor Child,**

**D.H., Minor Child,**
   Appellant.

_____

Appeal from the Iowa District Court for Buena Vista County, Mary L. Timko, District Associate Judge.

A juvenile adjudicated delinquent challenges the order requiring him to register as a sex offender. **AFFIRMED.**

Lisa Mazurek of Mazurek Law Firm, P.C., Cherokee, for appellant.

Thomas J. Miller, Attorney General, Bruce Kempkes, Assistant Attorney General, Dave Patton, County Attorney, and Matthew Speers, Assistant County Attorney, for appellee.

Considered by Danilson, C.J., and Doyle and Tabor, JJ.

**TABOR, J.**

After spending more than nine months in a psychiatric medical institution for children (PMIC), D.H. asked the juvenile court to waive the requirement that he register as a sex offender under Iowa Code section 692A.103(3) (2013). The court declined D.H.'s waiver request, finding the teenager posed a risk of reoffending outside the structure and supervision of his home. Mindful "the legal standard for waiver is guided by public protection," we conclude the juvenile court acted within its discretion in deciding D.H. failed to prove he was unlikely to reoffend in the community. Accordingly, we affirm the registration requirement.

## I.     Background Facts and Prior Proceedings

This delinquency case started for D.H. when he was fourteen years old. In July 2012, the Buena Vista County Attorney filed a petition charging D.H. with multiple counts of false imprisonment, assault, and enticing a minor with intent to commit sexual abuse. The allegations involved three victims, who ranged in age from seven to ten. The State alleged D.H. would hold the victims down in his bedroom, lay on top of them, and "hump" them. D.H. later admitted performing the same acts on his twelve-year-old adopted sister.[1] On August 24, 2012, the juvenile court found a factual basis for D.H.'s plea to enticing a minor with intent to commit sexual abuse and adjudicated him delinquent. The State dismissed the remaining charges.

---

[1] According to the juvenile court, D.H. admitted in therapy "to repeatedly asking his victims to act out, bribing them, and pressuring them. While engaging in these behaviors, the three victims started resisting. [D.H.] then chose his adoptive sister to offend against because he had access to her and she was unlikely to resist."

Psychological evaluations indicated D.H. was not only the perpetrator of sexually related offenses, but had been a victim himself. Born in 1998, D.H. spent his early years in "an extremely abusive and neglectful biological environment before he was removed from the home." D.H. reported his biological father sexually abused him and D.H. witnessed "a great deal of domestic violence." He lived in four foster homes before being adopted in 2008. In 2011, he was diagnosed with reactive attachment disorder, attention deficit hyperactivity disorder, conduct disorder, and post traumatic stress disorder.

Juvenile Court Services placed D.H. at the Piney Ridge PMIC in Waynesville, Missouri, on November 15, 2012.[2] His admitting diagnoses included mood disorder, reactive attachment disorder, oppositional defiant disorder, intermittent explosive disorder, attention deficit hyperactivity disorder, conduct disorder, and borderline intellectual functioning. After nine months of treatment, Piney Ridge discharged D.H. on September 4, 2013. The discharge summary noted D.H. successfully completed the Sexually Abuse Youth (SAY) program. He was discharged to his parents' home in Missouri.[3]

The juvenile court held a review hearing on February 26, 2014, at which the judge considered whether D.H. should be placed on the sex offender registry. The proceedings were not reported, but the parties submitted evidence. D.H.

---

[2] Before the juvenile delinquency action started, D.H. was voluntarily placed in Four Oaks residential treatment center for ten months. He was also placed in the Rabinar residential treatment center for fifteen months. These placements did not succeed in addressing D.H.'s sexually abusive behavior.

[3] D.H.'s adoptive parents moved to Missouri during the pendency of the juvenile delinquency case. Neither party has suggested the Iowa juvenile court did not retain jurisdiction to order D.H. to register as a sex offender.

requested that he be exempted from the sex offender registry. His juvenile court officer recommended the court waive the registration requirement. The district court kept the record open until March 31, 2014, so an updated risk assessment could be completed.

On April 17, 2014, the district court issued its order requiring D.H. to register as a sex offender under Iowa Code chapter 692A. The court also closed the probationary period and discharged D.H. from the jurisdiction of the juvenile court. D.H. appeals the district court's decision to place him on the sex offender registry.

## II. Legal Principles Governing the Sex Offender Registry and Hybrid Standard of Review for Registration Orders in Delinquency Cases

In Iowa, a person who is convicted of or adjudicated delinquent for committing certain sexual offenses is required to register as a sex offender. Iowa Code chapter 692A. The "paramount purpose" of the registry is to protect the public from sex offenders, including juvenile offenders, after they have been released back into society following the disposition of their cases. *In re A.J.M.*, 847 N.W.2d 601, 604 (Iowa 2014).

The law presumes all sex offenders must register, but the court may waive the requirement for eligible juveniles who were adjudicated delinquent for a sexual offense that requires registration. *Id.* Eligible juveniles are those who were less than fourteen years of age at the time of the offense or were not adjudicated for a sex offense "committed by force or the threat of serious violence, by rendering the victim unconscious, or by involuntarily drugging the

victim." Iowa Code § 692A.103(4). The juvenile bears the burden to rebut the registration presumption. *In re S.M.M.*, 558 N.W.2d 405, 407 (Iowa 1997).

The code allows a juvenile court to waive the registration requirements for an eligible juvenile when it "finds that the person should not be required to register." Iowa Code § 692A.103(3). But the code does not provide any specific guidelines or factors for the court to consider. *See id.* Our supreme court recently decided an on-the-record *finding* by the juvenile court was key in a registration waiver situation. *See A.J.M.*, 847 N.W.2d at 605, 607. The *A.J.M.* court held juvenile courts must exercise their discretion under section 692A.103(3) to determine "whether the juvenile is likely to reoffend." *Id.* at 607. A likelihood means reoffending is "probable or reasonably to be expected." *Id.* at 606.

We review juvenile delinquency proceedings de novo. *In re D.S.*, 856 N.W.2d 348, 351 (Iowa 2014). But when we are reviewing the juvenile court's exercise of statutory discretion, we review the evidence de novo to determine whether the discretion was abused. *A.J.M.*, 847 N.W.2d at 604; *In re B.A.*, 737 N.W.2d 665, 667 (Iowa Ct. App. 2007). We will conclude the juvenile court abused its discretion "when its ruling is based on grounds that are unreasonable or untenable." *A.J.M.*, 847 N.W.2d at 607. The terms "unreasonable" and "untenable" refer to rulings not supported by substantial evidence or based on mistaken applications of the law. *Id.*

**III.    Analysis of D.H.'s Waiver Claim**

D.H. contends the juvenile court abused its discretion in ordering him to register as a sex offender.  D.H. accurately observes the juvenile court "did not squarely state a finding as to the likelihood" that he would reoffend.[4]  But D.H. acknowledges the court implicitly reached that determination.

The juvenile court stated: "The reports are clear that with [his] parents providing structure, support, and supervision, along with their loving commitment to him, [D.H.] will likely not re-offend in the home."  The juvenile court further stated: "Unfortunately, the record does not support that this same protection, supervision, and structure can be provided to [D.H.] outside of the home in a community setting.  This is precisely the reason that the sex offender registry was created—to protect the community at large."  The court commended D.H.'s adoptive family members for their involvement in the case and commitment to him.

> But for this, it is likely that [D.H.] would still be involved in inpatient care.  He is now able to return home due to the implementation of the structure and supervision provided by the [family].  At this time, the same cannot be said for the ability to provide that increased level of structure and supervision in the community at large thereby reducing [D.H.'s] risk of re-offending in the community.

The juvenile court's finding that D.H. was not likely to reoffend at home, but remained at risk of reoffending in community was based on substantial evidence in the record.  D.H.'s juvenile court officer reported "[i]n the home

---

[4] When issuing its ruling on April 17, 2014, the juvenile court did not have the benefit of the supreme court's June 6, 2014 decision in *A.J.M.* which held the registration requirement could not be waived without a specific finding by the court that the juvenile was not likely to reoffend.  *See A.J.M.*, 847 N.W.2d at 608.

setting, [D.H.] has been monitored closely as not to put his siblings at further risk. An alarm was placed on [D.H.]'s door to monitor his whereabouts in the home." By contrast, concerns about D.H.'s ability to navigate social situations in the larger community were expressed by D.H.'s therapist, Shandra Carter, in her March, 29, 2014, risk reassessment:

> The only concerning dynamic factor present for [D.H.] is his social isolation. Finding opportunities for [D.H.] to develop emotionally intimate peer relationships outside of the school day will be important. This will require some creativity, as the [family] are geographically isolated, have a busy schedule and have to factor in the level of supervision needed for [D.H.] given the activity.

The juvenile court was within its discretion in seizing on the therapist's uncertainty concerning D.H.'s interactions in the world beyond Piney Ridge and his family home.[5] Waiver from the registry requirement is only available when the juvenile court "finds" in its discretion that the eligible juvenile is not likely to reoffend. *A.J.M.*, 847 N.W.2d at 606 (opining "the legal standard for waiver under the statute is guided by public protection"). In this case, the court decided D.H. did not carry his burden to show no likelihood of reoffending: "Although [D.H.] is able to show that he can engage in following and obeying rules when provided structure and a highly-supervised environment, the court needs more to ensure that the community is protected."

D.H. complains the juvenile court relied too heavily on facts about his life which predated his delinquency adjudication and on the penultimate risk

---

[5] The record revealed D.H.'s lack of social maturity. His juvenile court officer reported that although D.H. is now sixteen years old, he acts as if he were much younger. For example, D.H. would rather build a fort or play with Lego blocks with his younger brother than "hang out with kids his own age."

assessment which discussed his treatment of and attitude toward his victims. The State responds by asserting the juvenile court appropriately recounted all of the evidence relevant to the registration requirement. The State voices the stronger position. The same judge presided at all stages of D.H.'s delinquency proceedings. She had an opportunity to observe D.H. at various proceedings and to follow the progression of his placements. Contrary to D.H.'s argument on appeal, the juvenile court did not misunderstand the evolution of the case.

The nature of the offender's acts, the offender's status, his attitude toward his victims, as well as clinical judgment and assessment tools, are all factors which courts may consider in deciding if a juvenile is appropriately listed on the sex offender registry. *See B.A.*, 737 N.W.2d at 668 (reviewing whether court abused its discretion in denying juvenile's request to be removed from the registry). In this case, the juvenile court order offered a fair portrayal of D.H.'s offending acts, his initial minimizing of the harm and blaming of the victims, and his eventual remorse and empathy toward the victims. Even granting D.H. the progress he has made, the seriousness of his delinquent behavior remains a relevant aspect of the juvenile court's finding.

D.H. also emphasizes that therapist Carter amended his risk of reoffending from moderate to low in her final report to the court. The juvenile court acknowledged the therapist's updated clinical assessment, but also highlighted countervailing concerns in her report. As trier of fact, the court was within its discretion to accept or reject the expert's opinion in whole or in part. *See Rouse v.* State, 369 N.W.2d 811, 815 (Iowa 1985).

The waiver decision ultimately rests with judges, not clinicians. The juvenile court found D.H. failed to carry his burden to show he was unlikely to reoffend when outside the structure of his home life and supervision of his parents. That finding was neither unreasonable nor untenable given all of the circumstances. Accordingly, we affirm the order requiring D.H. to register as a sex offender. [6]

**AFFIRMED.**

Danilson, C.J., dissents; Doyle, J., concurs.

---

[6] Our resolution does not preclude future motions by the juvenile to modify or suspend the registration based on "good cause." *See* Iowa Code § 692A.103(5); *see also B.A.*, 737 N.W.2d at 668 (examining juvenile's request to be removed from the sex offender registry under earlier version of the statute).

**DANILSON, C.J.** (dissenting)

I respectfully dissent. On this record, it is hard to imagine a case where a waiver of sex offender registry is more appropriate. Moreover, the juvenile court never made the requisite finding that D.H. was likely to reoffend. *In re A.J.M.*, 847 N.W.2d 601, 608 (Iowa 2014) (remanding because the absence of a finding that the child was likely to reoffend prevents the ability on review to determine if the juvenile court properly exercised its discretion).

Although the court concluded D.H. was not likely to reoffend in the home, the court only surmised the same protection, supervision, and structure was not available in the community at large. Such a conclusion is not synonymous with a conclusion that D.H. was *likely* to reoffend outside of the home.

Even if we could say the record is sufficient, according to the most recent report prepared by Licensed Clinical Social Worker Sandra L. Carter and dated March 29, 2014, the original assessment of a moderate risk to reoffend "has been mitigated to low risk." Significantly, she also notes D.H. has already been "reunified with his family, *returned to high school and reintegrated back into his community.*" This report was prepared almost seven months after D.H.'s return to the family home. So it appears any concern about D.H. being in the community at large is diminished. In my opinion, the juvenile court placed too much reliance on an earlier report prepared before D.H. had completed the sex offender treatment program.

Carter and the juvenile court expressed concerns about D.H.'s social isolation and maturity, two factors not previously identified as factors to consider

in making the decision to waive the registry requirement. *See In re B.A.*, 737 N.W.2d 665, 668 (Iowa Ct. App. 2007) (reciting the following factors: "(1) the nature of the offenses; (2) the status of the victims; (3) [the offender's] status, attitude, and ability to obey rules as well as his safety plan and his attitude toward following it; (4) clinical judgment; and (5) assessment tools." Although immaturity and social isolation may be characteristics of someone likely to reoffend, these characteristics are not uncommon in society as a whole, especially in this digital era where teenagers eschew personal contact for contact with friends via their electronics. One also has to wonder if any isolation may be related to D.H.'s remorse and embarrassment. The court lacked evidence to explain the significance of these two characteristics as it may relate to the likelihood to reoffend.

It is also doubtful any expert will ever say in cases of this nature that there is no risk to reoffend. And our supreme court has noted that it is possible for any juvenile sex offender to reoffend even if registered as a sex offender. *A.J.M.*, 847 N.W.2d at 606-07. There are also few families who will go the extra mile to provide such a child with the structure, support, and supervision being provided by D.H.'s family. Moreover, D.H. has successfully completed a sex offender treatment program and has shown remorse for his actions.

Assuming a juvenile otherwise meets the requirements of Iowa Code section 692.103(3), and absent other aggravating circumstances, a juvenile who has been evaluated to be a low risk to reoffend, has strong family support, has successfully completed treatment, and shows remorse, would appear to be an

ideal candidate for waiver of the sex offender registry requirement as authorized by the legislature.

Here, I would reverse and remand on the basis that the juvenile court abused its discretion by relying too heavily on a report prepared before the treatment program was completed and on factors not shown in this record to be reflective of risks to reoffend. I would not require the juvenile court to enter an order for waiver but rather require the juvenile court to consider the issue anew upon up-to-date evidence and reports supported by testimony explaining factors that may bear on the risk to reoffend.