**IN THE COURT OF APPEALS OF IOWA**

No. 15-1475
Filed March 23, 2016

**IN THE INTEREST OF R.J.,**
**Minor child.**

_____

Appeal from the Iowa District Court for Buena Vista County, Mary L. Timko, Associate Juvenile Judge.

Juvenile appeals from an order modifying disposition in a delinquency proceeding. **AFFIRMED.**

Andrew J. Smith of Mack, Hansen, Gadd, Armstrong & Brown, P.C., Storm Lake, for appellant.

Thomas J. Miller, Attorney General, and Bruce Kempkes (until withdrawal) and Mary Triick, Assistant Attorneys General, for appellee State.

Considered by Tabor, P.J., and Bower and McDonald, JJ.

**MCDONALD, Judge.**

R.J. was adjudicated delinquent on a charge of credit card fraud, in violation of Iowa Code section 715A.6 (2013), and placed on probation. The dispositional order placed R.J. in the custody of juvenile court services for placement in a psychiatric medical institution for children (PMIC)/residential treatment facility. He was placed at Jackson Recovery Centers and underwent substance abuse treatment. He progressed and reached a point of discharge. The matter came on for dispositional review in August 2015. It was agreed there had been a substantial change in circumstances. The child requested return to the parental home. After receiving evidence, the juvenile court ordered R.J. remain in the custody of juvenile court services and placed in a second facility for a limited period of time to address additional behavioral concerns. R.J. appeals.

"We normally review proceedings in juvenile court de novo. When the issue on appeal relates to statutory discretion exercised by the juvenile court, however, we review the evidence de novo to determine whether the discretion was abused." *In re A.J.M.*, 847 N.W.2d 601, 604 (Iowa 2014). Generally, the juvenile court is required to enter the least restrictive dispositional order appropriate. *See* Iowa Code § 232.52(1). "Though a juvenile judge is not required to implement each less restrictive dispositional alternative before reaching the most restrictive one, the selection of any one disposition over another requires rejection of others, more or less onerous, and reasons for that rejection." *In re J.T.S.*, No. 06-0020, 2006 WL 1751279, at *3 (Iowa Ct. App. June 28, 2006).

On de novo review, we cannot conclude the district court abused its discretion in requiring the juvenile to remain in the custody of juvenile court services and placed in group placement for additional education and treatment. R.J. has history with juvenile court services. His first contact occurred after he was charged with possession of alcohol in December 2013. Typically, a charge of this type would require the minor to complete alcohol education classes; however, R.J.'s mother reported she was having difficulty with her son. According to her, R.J. associated with a negative peer group, used illegal substances, and was disrespectful to her. His attitude and academic performance were poor. He was referred to alcohol education classes and services to address delinquent thinking and family relationships. Between February and August 2014, R.J. and his mother took part in services, but the services were unsuccessful. R.J. met fewer than 50% of his goals. After services were terminated, R.J.'s mother continued to contact juvenile court services for assistance, reporting that R.J. was disrespectful and that R.J. used alcohol and illegal substances.

On September 20, 2014, R.J. was charged with the instant offense. Initially, after being adjudicated delinquent, R.J.'s behavior improved slightly. On January 13, however, R.J.'s mother contacted juvenile court services to report R.J. "flipping out." She and R.J. got into a big fight when she refused to let him use a toaster to light a cigarette and smoke outside the home. On February 2, 2015, R.J.'s mother reported R.J. had missed school twice in the last week. He was unaccounted for from the prior Thursday to Saturday evening. In one argument, R.J. told his mother he now knew why his father had left her. She

became upset and shoved R.J. away from her; in turn, he shoved her, and she fell to the ground, striking her eye on a windowsill. In sum, R.J.'s behavior, despite the receipt of services, continued to be inconsistent and the relationship with his mother continued to be difficult.

In light of this history, the evidence admitted during the modification hearing showed R.J. was in need of additional services. The juvenile court officer's report recognized R.J. had progressed with his substance abuse issues but concluded a return to the parental home would be "setting him up to fail" because the family dynamic had not been addressed. The juvenile court officer recommended R.J. be placed for 90-120 days in a residential treatment facility to address errors in thinking, respect for authority, insight into antisocial behaviors, and family dysfunction. Considerable weight attaches to a juvenile court officer's opinion. *See, e.g.*, *State v. Greiman*, 344 N.W.2d 249, 251 (Iowa 1984). R.J.'s mother stated she always wanted her son with her no matter what. She also recognized there were some issues she and R.J. needed to address. R.J. read a letter he had prepared regarding improvements he had made and lessons he had learned in the facility. He had worked on his anger and impulsiveness. He was taking more responsibility for his actions. He had learned to accept feedback and rules. He had worked on relapse prevention and coping skills. He said he would be willing to comply with any terms of probation.

Although R.J. had progressed and demonstrated better behavior, the juvenile court found additional treatment was necessary and return to the parental home at the time of the disposition hearing would have interfered with

the progress already made.  We affirm the judgment of the juvenile court.

**AFFIRMED.**