**IN THE COURT OF APPEALS OF IOWA**

No. 21-0486
Filed January 12, 2022

**IN THE INTEREST OF A.N.,**
**Minor Child.**

_____

Appeal from the Iowa District Court for Shelby County, Charles D. Fagan, District Associate Judge.

An adjudicated delinquent appeals the juvenile court ruling requiring him to register as a sex offender. **AFFIRMED.**

Matthew J. Hudson of Law Office of Matthew J. Hudson, Harlan, for minor child.

Thomas J. Miller, Attorney General and Mary A. Triick, Assistant Attorney General for appellee, State.

Considered by Bower, C.J., and Greer and Badding, JJ.

**GREER, Judge.**

In 2018, A.N. accepted a plea deal and was adjudicated delinquent after committing acts that, were he an adult, would be second-degree burglary and third-degree criminal mischief.  The juvenile court found beyond a reasonable doubt that the offense was sexually motivated, making A.N. eligible to be placed on the sex offender registry.  *See* Iowa Code §§ 692A.102(1)(c)(19),[1] 692A.103(3), 692A.126(p) (2018).  Days before A.N.'s eighteenth birthday in 2021, a delinquency permanency review hearing was held to determine if A.N. should have to register as a sex offender.  Because A.N. was not present, his attorney moved to continue the hearing—the juvenile court denied the motion.  The juvenile court received evidence that A.N. had a threat of reoffending and required A.N. to register.  A.N. now appeals, stating that there was insufficient evidence to support the finding his acts were sexually motivated, that the court abused its discretion by not granting the motion to continue, and that placing him on the sex offender registry constituted cruel and unusual punishment in violation of the Iowa Constitution.  For the reasons discussed below, we affirm the juvenile court's ruling.

**Prior Facts and Proceedings.**

In 2018, A.N. entered his neighbors' home and went into the room where their two daughters, ages eight and ten, slept.  One daughter awoke as A.N. stood over her bed with his arms stretched out toward her.  The daughter was able to

---

[1] This section was renumbered as 692A.102(1)(c)(20) after a new subparagraph was added in 2020.  *See* 2020 Iowa Acts ch. 1115, § 4 (adding subparagraph (13), "[c]ontinuous sexual abuse of a child in violation of section 709.23").

leave the room and went to get her mother. A.N. fled, breaking the bedroom window to escape the home. Under the jurisdiction of the juvenile court, he was adjudicated delinquent and entered an *Alford* plea for what would have been burglary in the second degree were he an adult. He also pled guilty to what would have been criminal mischief in the third degree if he were an adult. At the time of adjudication, in addition to A.N.'s plea, the juvenile court found beyond a reasonable doubt that the offense was sexually motivated.[2] This finding qualified A.N. to be placed on the sex offender registry, *see* Iowa Code § 692A.126(1)(p), but the juvenile court temporarily waived the requirement. *See* Iowa Code § 692A.103(3). A.N. was placed on formal probation and was sent to the State Training School (STS) with orders to undergo sex offender treatment.

While at the STS, A.N.'s behavior deteriorated. Reports entered as evidence to the juvenile court reflect he was disrespectful, threatening, aggressive, manipulative, and disruptive. There were multiple documented instances of A.N. assaulting staff members. Despite attending the Adolescent Sexual Abuse Program (ASAP), he continued to act out—STS reports note that he hid to watch female staff members, snuck into offices to access pornography, and repeatedly exposed and touched himself inappropriately.[3] Eventually, he was removed from all classes with female educators and was not allowed to be alone with female staff. He completed thirty-two weeks in the ASAP program and reached maximum

---

[2] Exhibits admitted in the juvenile court for the final disposition stated A.N. admitted in a 2019 group session for adolescent males with sexual abuse histories that, had the child not woken up, he would have committed a sexual offense against her.
[3] A 2020 report on A.N.'s progress reflected four such incidents in a two-week span.

benefit, meaning that he completed the work acceptably but continued to demonstrate sexually-driven behavior. He showed little remorse for the actions for which he had been adjudicated and believed he did not have a victim.

As A.N. reached maximum benefit from STS, he was released from secure detention in November 2020, but he was required to undergo an updated psychosexual evaluation to aid the juvenile court in evaluating his placement on the sex offender registry. A hearing on the issue was held the following March; but, A.N. was not present. His attorney moved to continue, noting "it sounded like [A.N.'s absence] may be based on an emergency."[4] The juvenile court noted that it was unclear that there was any emergency and, with only days until A.N.'s eighteenth birthday, the hearing had to occur. So, the motion was denied.

Dr. Christine Guevara, who previously evaluated A.N. and conducted his most recent evaluation, testified. As she put it, "[A.N.'s] prognosis is poor because at the time he was being evaluated, not only did he have poor insight related to [his psychosexual] conditions but also had no motivation to proceed with additional treatment for those conditions." He was not participating in treatment or following recommendations from his release. Dr. Guevara recommended A.N. be placed on the sex offender registry for at least five years, in part due to his high risk for noncontact offenses such as exposure or "deviant pornography use." The State also recommended A.N. be required to register.

---

[4] In his appellate briefing, relying on facts outside the record, A.N. explains he was not present because his mother had an emergency and he had no personal transportation. See Iowa R. App. P. 6.801 (defining the composition of record on appeal); see also In re Marriage of Roberts, 954 N.W.2d 757, 761 n.7 (Iowa Ct. App. 2020) ("On appeal, we consider only evidence that has been submitted to the district court.")

The juvenile court ultimately ordered A.N.'s placement on the sex offender registry for ten years. It stated the main factor it considered was A.N.'s lack of effort towards completing his ordered treatment. Reflecting on the whole of the case, the court commented:

> [I]n looking at [A.N.'s] overall history, his thoughts, and his manipulation in every instance, and every time he comes in to the Court, he tells the Court how he's been successful, how he's completed it, and how there's no reason that he ever needed to be in there in the first place, he has taken none of it to heart. He has not followed through with anything nor completed the registry requirements.
> And I don't go into this lightly. It is very rare that I, as a judge, if ever—As a matter of fact, [A.N.] will be the first time that I've ever allowed—had a juvenile register. The harsh reality of it is he has earned this through his inactivity and his continuing failure to follow through and show this Court that he is in a position where he would not reoffend.

A.N. was given five days to register. He now appeals.

**Discussion**

On appeal, A.N. argues (1) there was insufficient evidence to support the finding his acts were sexually motivated, (2) the juvenile court abused its discretion and violated his due process rights by not granting the motion to continue, and (3) placing him on the sex offender registry constituted cruel and unusual punishment in violation of the Iowa Constitution. We discuss each in turn.

*1. Finding of Sexual Motivation.*

A.N. argues the juvenile court had insufficient evidence to support the finding his acts were sexually motivated. A.N. did not preserve error on this issue, as he raises concerns about the punitive nature of the sex offender registry and the lack of sufficient evidence for the first time on this appeal. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of

appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal"). At the hearing, A.N.'s attorney argued a combination of factors, including the length of time A.N. would be on the registry and the lack of evidence A.N. would engage in a criminal act involving a "physical assault."

But, even if this argument was preserved, it faces an impossible hurdle. The 2021 hearing he appeals from did not decide his actions were sexually motivated; instead, that finding was made in the 2018 adjudication following his plea agreement. For juveniles, a delinquency adjudication can only be appealed after a disposition order has been entered, following the same rules as cases appealed from the district court. Iowa Code § 232.133(1), (2). And these rules dictate a party has thirty days after an order or judgment is filed to file a notice of appeal. Iowa R. App. P. 6.101(1)(b). In 2018, the juvenile court entered a combined delinquency adjudication and disposition order finding that A.N.'s actions had been sexually motivated. A.N. did not appeal the 2018 order—the thirty-day window has now long passed. We cannot now, years later, disturb the finding. *See Hills Bank & Tr. v. Converse*, 772 N.W.2d 764, 771 (Iowa 2009) ("A failure to file a timely notice of appeal leaves us without subject matter jurisdiction to hear the appeal."); *see also In re K.R.*, No. 07-1994, 2008 WL 2746709, at *2 (Iowa Ct. App. July 16, 2008) (using the 30-day requirement for a juvenile's appeal). A.N., then, qualified for placement on the sex offender registry. *See* Iowa Code §§ 692A.102(1)(c)(19), 692A.103(3), 692A.126(p) (stating, when taken together, that if second-degree burglary is deemed to be sexually motivated, the individual shall register for the sex offender registry); *cf.* Iowa Code § 692A.103(3)

("A juvenile adjudicated delinquent for an offense that requires registration shall be required to register as required in this chapter unless the juvenile court waives the requirement and finds that the person should not be required to register under this chapter.").

As all that remains is a challenge to the juvenile court's choice to place A.N. on the registry given the nature of his charge, this is an issue of "statutory discretion exercised by the juvenile court," so "we review the evidence de novo to determine whether the discretion was abused." *In re A.J.M.*, 847 N.W.2d 601, 604 (Iowa 2014). Insofar as A.N. is arguing that the juvenile court abused its discretion in placing him on the sex offender registry, we disagree. The juvenile court can waive the requirement for a juvenile to register when it "'finds' in its discretion that the eligible juvenile is not likely to reoffend." *Id.* at 606. The juvenile court here did not make that finding, nor do we. Instead, we find the record supports the likelihood that A.N. will reoffend. A.N. continuously rebuffed treatment and rehabilitation, showed no comprehension of the gravity of his actions, and continued a pattern of sexual misconduct even while going through his program. The final psychosexual report and Dr. Guevara's testimony at the hearing indicated a high risk he would commit further noncontact sexual offenses.[5] To support her conclusions, Dr. Guevara relied upon the results of tests showing A.N. met the criteria for exhibitionist disorder. The evaluator noted A.N.'s exhibitionism occurred even in a controlled setting. On our review, the record provides no

---

[5] A.N., in his brief and at argument, attempts to downplay the seriousness of "noncontact" offenses. The fact remains that this behavior (indecent exposure) alone would be grounds to be placed on the sex offender registry. Iowa Code §§ 692A.102(1)(a)(5), 692A.103(1), 709.9 (2021).

evidence that A.N. is not likely to reoffend; as such, his placement on the registry was a proper use of statutory discretion.

*2. Motion to Continue.*

A.N. argues next that the juvenile court violated his due process rights and abused its discretion in denying his motion to continue. First, we note A.N. did not preserve error on the due process argument because no mention of it was made in his motion or the surrounding hearing. *See Meier*, 641 N.W.2d at 537. So, we do not consider the argument.

Moving to his second point, we review the juvenile court's denial of a motion to continue for an abuse of discretion. *State v. Artzer*, 609 N.W.2d 526, 529 (Iowa 2000); *In re D.C.*, No. 17-1031, 2018 WL 2246852, at *2 (Iowa Ct. App. May 16, 2018). "A motion for continuance shall not be granted except for good cause." Iowa Ct. R. 8.5. "[W]e will reverse only 'if injustice will result to the party desiring the continuance,'" and the appealing movant must show prejudice. *In re R.B.*, 832 N.W.2d 375, 378 (Iowa Ct. App. 2013) (citation omitted); *see also In re L.R.*, No. 13-0713, 2013 WL 4504930, at *3 (Iowa Ct. App. Aug. 21, 2013). A.N. presents no argument regarding prejudice. Further, the juvenile court had no proof at the hearing about good cause for the continuance beyond a potential, amorphous claim of emergency.

Practically, the juvenile court faced a time crunch because of A.N.'s impending birthday—the permanency review had the potential to end its jurisdiction.[6] The juvenile court noted:

---

[6] Iowa Code section 232.2(5) defines a child as "a person under eighteen years of age." "The juvenile court . . . has exclusive original jurisdiction in proceedings

> The downside to that is we don't know for a fact that it is an emergency and this young man turns 18 [soon], which is . . . mere . . . days from today's date at which time this Court believes that him being an adult, exercise of my jurisdiction will potentially end and the decision needs to be made. And, certainly, [A.N.] was aware of that, so I'm going to deny your motion to continue this matter.

As support, Iowa Code section 232.53(2) states, in part, "All dispositional orders entered prior to the child attaining the age of seventeen years shall automatically terminate when the child becomes eighteen years of age." *Cf.* Iowa Code § 692A.103(5)(b) ("If at the time of the hearing the juvenile is participating in an appropriate outpatient treatment program for juvenile sex offenders, the juvenile court may enter orders temporarily suspending the requirement that the juvenile register and may defer entry of a final order on the matter until such time that the juvenile has completed or been discharged from the outpatient treatment program."). The last dispositional order before the November 2020 hearing occurred before A.N.'s seventeenth birthday—this hearing was an extension of that order, a final piece to the ultimate dispositional puzzle that was required before A.N. turned eighteen. The court had good reason to hold the hearing given the timeline.

As A.N. has not shown good cause or prejudice, and given the need for finality before A.N.'s eighteenth birthday, we find the juvenile court did not abuse its discretion by denying A.N.'s motion to continue.

---

concerning an adult who is alleged to have committed a delinquent act prior to having become an adult, and who has been transferred to the jurisdiction of the juvenile court pursuant to an order under section 803.5." Iowa Code § 232.8.

*3. Cruel and Unusual Punishment.*

Finally, A.N. argues that his sentence is cruel and unusual punishment. His challenge implicates his constitutional right against cruel and unusual punishment under the Eighth Amendment of the federal constitution and article I, section 17, of the Iowa Constitution. As this is a constitutional challenge, our review is de novo. *State v. Roby*, 897 N.W.2d 127, 137 (Iowa 2017).

The State argues error was not preserved on this issue. And, as applied to A.N., the State is correct—no such argument was raised to the juvenile court. *Meier*, 641 N.W.2d at 537. A.N. only argued his conduct did not warrant placement on the registry so the punishment is cruel and unusual. However, our rules of error preservation are circumvented when a party claims their sentence is illegal. *See State v. Bruegger*, 773 N.W.2d 862, 871 (Iowa 2009) ("[A] challenge to an illegal sentence includes claims that the court lacked the power to impose the sentence or that the sentence itself is somehow inherently legally flawed, including claims that the sentence is outside the statutory bounds or that the sentence itself is unconstitutional. . . . Where, as here, the claim is that the sentence itself is inherently illegal, whether based on constitution or statute, we believe the claim may be brought at any time."). We note that on appeal, A.N. has not distinguished if he is making a categorical attack on the sentence or an attack as applied. *See State v. Propps*, 897 N.W.2d 91, 103 (Iowa 2017) ("While we generally do not decide cases based on grounds not raised in the district court, in *Bruegger* we allowed a defendant to continue with an as-applied challenge when his brief did not clearly distinguish between a categorical or as-applied attack on his sentence."). So, we take each in turn.

Turning to A.N.'s categorical assertion on appeal over his sentence, he contends placement on the sex offender registry for a "non sexually" related crime is "clearly cruel and unusual punishment." To prove his point, A.N. directs us to *In re T.H.*, 913 N.W.2d 578, 597 (Iowa 2018), without developing the connection. But, in *T.H.*, our supreme court found that while a juvenile's placement on the sex abuse registry is punishment, it is not cruel and unusual. *In re T.H.*, 913 N.W.2d 578, 597 (Iowa 2018). In sum, under a categorical constitutional challenge to A.N.'s sentence, we find the imposition of the sentence was not cruel and unusual punishment based upon the holding of *T.H. Id.*

For A.N.'s as-applied challenge, we begin analyzing if a sentence is cruel and unusual as applied to an individual with the "threshold inquiry examining 'whether the sentence being reviewed is "grossly disproportionate" to the underlying crime,' which 'involves a balancing of the gravity of the crime against the severity of the sentence.'" *State v. Wickes*, 910 N.W.2d 554, 572 (Iowa 2018) (citation omitted). To the extent A.N. is arguing the sentence is grossly disproportionate as applied to his ultimate culpability, we bear in mind the "bedrock rule of law that punishment should fit the crime." *State v. Harrison*, 914 N.W.2d 178, 202 (Iowa 2018) (citing *Bruegger*, 773 N.W.2d at 872). In this analysis, we substantially defer to the legislature "because '[l]egislative judgments are generally regarded as the most reliable objective indicators of community standards for purposes of determining whether a punishment is cruel and unusual.'" *State v. Oliver*, 812 N.W.2d 636, 650 (Iowa 2012) (alteration in original) (citation omitted). It is "rare that a sentence will be so grossly disproportionate to the crime as to satisfy the threshold inquiry and warrant further review." *Id.* Still, unique features

of a case can "converge to generate a high risk of potential gross disproportionality" that would surpass the threshold. *Bruegger*, 773 N.W.2d at 884 (marking the converging factors in *Bruegger* as "a broadly framed crime, the permissible use of preteen juvenile adjudications as prior convictions to enhance the crime, and a dramatic sentence enhancement for repeat offenders"). In A.N.'s case, his placement on the sex offender registry is not the result of unusual converging factors; he was placed on the sex offender registry after he admitted the sexual motivation of his actions, failed to complete his rehabilitative programming, and expert testimony outlined A.N.'s exhibitionism and risk of re-offense. As such, he is unable to overcome the threshold question, and we proceed no further. *Oliver*, 812 N.W.2d at 647 ("If, and only if, the threshold test is satisfied, a court then proceeds to steps two and three of the analysis.").

**Conclusion.**

As A.N. did not timely appeal the finding that his actions were sexually motivated, the court could properly determine he should be placed on the sex offender registry. And, we note the record supported a finding of high risk for reoffense by A.N. related to sexually motivated criminal activity. As to his motion to continue, he did not preserve a due process argument and the court did not abuse its discretion in deciding to move forward with the hearing as scheduled. Finally, his placement on the sex offender registry does not constitute cruel and unusual punishment. We affirm the juvenile court's order.

**AFFIRMED.**