# IN THE COURT OF APPEALS OF IOWA

No. 18-1644
Filed May 1, 2019

**IN THE INTEREST OF G.R.,**
**Minor Child,**

**G.R., Minor Child,**
　　　Appellant.
_____

　　　Appeal from the Iowa District Court for Polk County, Rachael E. Seymour, District Associate Judge.


　　　A minor child appeals the juvenile court decision finding he committed the delinquent act of sexual abuse in the second degree. **AFFIRMED.**


　　　Cory McClure, Annie von Gillern, and Amy K. Davis of Babich Goldman, PC, Des Moines, for appellant.

　　　Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.


　　　Considered by Vogel, C.J., and Mullins and Bower, JJ.

**BOWER, Judge.**

G.R. appeals the juvenile court decision finding he committed the delinquent act of sexual abuse in the second degree. We find the court did not abuse its discretion in denying G.R.'s request for a consent decree or in determining G.R. should be required to register as a sex offender. We affirm the decision of the juvenile court.

## I. Background Facts & Proceedings

J.E. asked his parents, T.E. and D.E., if he could have two friends, G.R. and B.J., come to a sleepover on December 31, 2017, for a New Year's Eve party. G.R. was then fifteen years old. J.E.'s younger sister, C.E., who was then eight years old, was also present in the home. While J.E. and B.J. were playing video games in the basement, G.R. and C.E. were nearby playing with some of C.E.'s toys.

After a while, G.R. and C.E. went into an exercise room in the basement, closing the door behind them. The family had an inversion table where a person could strap their legs into the device and then be turned upside down. G.R. asked C.E. to play a game to see who could hang upside down the longest. C.E. strapped her legs into the device, and G.R. turned it so her head was towards the floor. In this position, G.R. pulled C.E.'s pants and underwear to her knees and touched her vaginal area, which she called her "la-la." He also put a finger into her anus. G.R. told C.E. not to worry because he was checking her heartbeat as part of his health class. He told her not to tell her parents. G.R. swung C.E. upright, she got out of the device, and pulled up her pants.

G.R. told C.E. whoever was the loser in the game would get two love pats on bare butt cheeks and a pinky in the butt hole. G.R. strapped himself into the inversion table, turned upside down for a period of time, then turned upright. He told C.E. she lost the game. C.E. pulled down her pants and bent over a bench, saying she did not want a pinky in the butt hole. G.R. gave her two pats on each butt cheek and put his pinky in her anus. G.R. and C.E. then returned to the party.

Later in the evening, C.E. told her mother what occurred. On January 1, 2018, C.E.'s parents called the police. G.R. told an officer he and C.E. had a contest to see who could hang upside down the longest on the inversion table but denied inappropriately touching C.E.

On February 22, 2018, the State filed a petition alleging G.R. committed the delinquent act of sexual abuse in the second degree, in violation of Iowa Code section 709.3(1)(b) (2017). At an adjudication hearing, C.E. testified to the incident on New Year's Eve. The juvenile court found C.E. was a credible witness. The court concluded the State presented sufficient evidence to show beyond a reasonable doubt G.R. committed the delinquent act of second-degree sexual abuse.

G.R. engaged in individual sexual-offender treatment from February to May 2018 but was told the counselor could not proceed with treatment because G.R. had not admitted to the sexual abuse. G.R. then began individual sexual-offender treatment with another counselor. G.R. had a psychosexual evaluation, which recommended individual therapy, sexual offender specific treatment, and a sexual-history polygraph. G.R.'s juvenile court officer (JCO) used the Juvenile Sexual Offense Recidivism Risk Assessment Tool-II (JSORRA-II) and determined G.R.

was at a low risk to reoffend. The JCO prepared a report recommending G.R. be granted a consent decree.

The dispositional hearing was held on October 19. G.R. requested a consent decree. The State resisted and asked to have G.R. placed on probation. The JCO recommended a consent decree, stating it was not uncommon for juvenile offenders to deny sexual abuse. She also stated G.R. had been willing to participate in services. On further questioning, the JCO stated G.R. had not taken any responsibility for his actions and had not expressed any sympathy or empathy for C.E.

The juvenile court denied G.R.'s request for a consent decree, finding "a Consent Decree is not appropriate under these circumstances given the child's age, nature of the offense, and the child's post-trial failure to meaningfully engage in services to address his offense which would increase the protection of the community." The court adjudicated G.R. of the delinquent act of second-degree sexual abuse. The court also determined G.R. should be required to register as a sex offender, noting the nature of the offense, as well as "the child's unsuccessful discharge from sex offender specific treatment and his lack of empathy towards the victim increase his risk to reoffend, which in turn, increases the risk to the community on a whole." G.R. now appeals the juvenile court's decision.

## II. Standard of Review

"Juvenile delinquency proceedings are 'special proceedings that provide an alternative to the criminal prosecution of children where the best interest of the child is the objective.'" *In re T.H.*, 913 N.W.2d 578, 582 (Iowa 2018) (quoting *In re*

*M.L.*, 868 N.W.2d 456, 460 (Iowa Ct. App. 2015)). Our review in delinquency proceedings is de novo. *In re A.K.*, 825 N.W.2d 46, 49 (Iowa 2013).

### III.    Consent Decree

G.R. claims the juvenile court abused its discretion by denying his request for a consent decree. He points out his JCO recommended a consent decree and the results of the JSORRA-II showed he was at a low risk to reoffend. He also points out the evidence showed he participated in services as requested by his JCO. On the issue of whether the court should enter a consent decree, we review "only to the extent of examining all the evidence to determine whether the juvenile court abused its discretion." *In re J.J.A.*, 580 N.W.2d 731, 737 (Iowa 1998).

Under section 232.46, prior to the entry of an adjudication in delinquency proceedings, "the court may suspend the proceedings on motion of the county attorney or the child's counsel, enter a consent decree, and continue the case under terms and conditions established by the court." Iowa Code § 232.46(1). "Section 232.46 imposes on the juvenile 'the burden to show, by a preponderance of the evidence, good cause for sustaining [his] motion to enter a consent decree.'" *J.J.A.*, 580 N.W.2d at 740 (quoting *In re Matzen*, 305 N.W.2d 479, 481–82 (Iowa 1981)).

"If the county attorney objects to the entry of a consent decree, the court shall proceed to determine the appropriateness of entering a consent decree after consideration of any objections or reasons for entering such a decree." Iowa Code § 232.46(3). The court may consider factors such as whether the child needs treatment, has been cooperative, or is a danger to the community. *See J.J.A.*, 580 N.W.2d at 740. The juvenile's "apparent failure to understand or appreciate the

seriousness of his delinquent acts and the impact of his harassment on others, [and] his apparent lack of remorse for his behavior," are also factors which may be considered. *See In re D.B.*, No. 04-0307, 2004 WL 2388733, at *4 (Iowa Ct. App. Oct. 27 2004).

We conclude the juvenile court did not abuse its discretion in denying G.R.'s request for a consent decree. The court noted, "the child's age, nature of the offense, and the child's post-trial failure to meaningful engage in services to address his offense which would increase the protection of the community." We also note his apparent failure to appreciate the seriousness of his conduct in committing second-degree sexual abuse on a young family friend, the impact his actions have had on C.E. and others, and his lack of remorse for his actions. *See id.* We affirm the court's decision denying the request for a consent decree.

## IV. Sex Offender Registry

G.R. claims the juvenile court abused its discretion by requiring him to register as a sex offender. Because the court denied G.R.'s request for a consent decree and adjudicated him to be delinquent, the court was then required to address the issue of whether he should be required to be placed on the sex offender registry. *See T.H.*, 913 N.W.2d at 583 ("Juveniles adjudicated delinquent of a qualifying offense are considered 'convicted' for [sex offender] registration purposes." (citing Iowa Code § 692A.101(7))).

"Notwithstanding, the registration statute permits the juvenile court to 'waive[ ] the registration' for juvenile offenders if it 'finds that the person should not

be required to register.'"[1]  *Id.* (quoting Iowa Code § 692A.103(3)).  "[T]he legal standard for waiver under the statute is guided by public protection.  Waiver is available when the juvenile court 'finds' in its discretion that the eligible juvenile is not likely to reoffend."  *In re A.J.M.*, 847 N.W.2d 601, 606 (Iowa 2014).  The court should consider whether it is "probable or reasonably to be expected" the juvenile will reoffend.  *Id.*

A juvenile has the burden "to establish that he is entitled to an exception" to the registration requirement.  *In re S.M.M.*, 558 N.W.2d 405, 406 (Iowa 1997).  G.R. points out his low score on the JSORRA-II and the Sex Offender Needs Assessment.  G.R. claims the evidence shows it is "probable or reasonably to be expected" he would not reoffend, and therefore, he should not be required to register as a sex offender.  *See A.J.M.*, 847 N.W.2d at 606.

In considering whether a juvenile should be required to register as a sex offender, "we review the evidence de novo to determine whether the [juvenile court's] discretion was abused."  *Id.* at 604.  The juvenile court stated,

> At this time, the Court find the child's unsuccessful discharge from sex offender specific treatment and his lack of empathy towards the victim increase his risk to reoffend, which in turn, increases the risk to the community on a whole.  For these reasons, as well as the nature of the offense, the Court finds the child has failed to meet his burden that he should not be required to register.

We conclude the juvenile court did not abuse its discretion in finding G.R. had an increased risk to reoffend due to his continued denial of the offense, failure to

---

[1]  "Additionally, if a juvenile court does not initially waive the registration requirement, it may subsequently 'modify or suspend the registration requirements' upon a showing of good cause prior to the discharge of a juvenile from the jurisdiction of the court."  *T.H.*, 913 N.W.2d at 583 (quoting Iowa Code § 692A.103(5)).

complete sex offender specific treatment, lack of sympathy or empathy for the victim, and the nature of the offense. We affirm the juvenile court's decision requiring G.R. to register as a sex offender.

We affirm the decision of the juvenile court.

**AFFIRMED.**