# IN THE SUPREME COURT OF IOWA

No. 20–0353

Submitted February 16, 2021—Filed April 9, 2021

**DENNIS BECHER,**

Appellant,

vs.

**STATE OF IOWA,**

Appellee.

---

Appeal from the Iowa District Court for Dubuque County, Michael J. Shubatt, Judge.

Sex offender registrant appeals decision of district court denying modification of his sex offender registry requirements. **REVERSED AND REMANDED.**

Appel, J., delivered the opinion of the court, in which all justices joined.

Nicholas A. Sarcone of Stowers & Sarcone PLC, West Des Moines, for appellant.

Thomas J. Miller, Attorney General, and John R. Lundquist, Assistant Attorney General, for appellee.

**APPEL, Justice.**

In this case, Dennis Becher appeals from a decision of the district court denying his application to modify his sex offender registry requirements. On appeal, Becher asserts that the district court misinterpreted or misapplied the provisions of Iowa Code section 692A.128 (2019). For the reasons expressed below, we reverse the decision of the district court and remand for further proceedings.

### I. Factual and Procedural Background.

**A. Introduction.** On June 2, 2000, Dennis Becher pled guilty to two counts of sexual abuse in the third degree against his nine-year-old adopted daughter in violation of Iowa Code sections 709.1 and 709.4(1) (2000). The district court sentenced Becher to two consecutive ten-year terms in prison. Becher fully discharged his sentence and was released from incarceration on May 10, 2009.

According to his prison discharge report, Becher "has done well at [the correctional facility]." During the period of his incarceration, he did not receive any disciplinary reports. He made connections with church groups, and "poured himself into treatment just as hard as he poured himself into church and his religious classes." While in prison, Becher completed a correspondence course in religious studies that was the equivalent of an associate of arts degree.

Because each of his convictions is an "aggravated offense," Becher is subject to lifetime registration as a sex offender. *See* Iowa Code §§ 692A.101(1)(*a*)(3) (defining sexual abuse in the third degree as an aggravated offense), .106(5) (mandating life registration for persons who are convicted of aggravated offenses) (2019). Becher has been on the registry since June 2, 2009, without any violation of the registration requirements.

On October 29, 2019, approximately ten years after his release from prison, Becher filed on an application for modification of his sex offender registry requirements pursuant to Iowa Code section 692A.128. In support of his application, Becher presented the results of an evaluation of his likelihood to reoffend prepared by the Iowa Department of Correctional Services (DCS) based on validated assessment tools. In addition, Becher and Ed Bateman, a pastor, counselor, and teacher to Becher, each testified in support of modification at a hearing before the district court.

**B. Department of Correctional Services Evaluation.** DCS evaluated Becher using the five validated tools. The results were as follows:

| | |
|---|---|
| STATIC-99R | Below average risk |
| ISORA | Low risk |
| ISORA/STATIC-99R Combined | Low risk |
| STABLE 2007 | Lowest risk |
| STABLE 2007/STATIC-99R | Low risk |

The evaluation indicated, however, that the STATIC-99R result may have overstated the risk based on the time Becher has been offense-free since his release. Because Becher has been offense-free for ten years, the evaluation stated that risk level should be very low risk.

**C. Testimony at Hearing.**

1. *Becher.* Becher testified that he was fifty-three years old and currently employed as a truck driver. He has been employed since his release from prison. He had been married for eight years, divorced, and at the time of the hearing was engaged to be married. Both women were aware of his sex offender status.

Becher admitted to two convictions of sex abuse between 1999 and 2000. Specifically, he admitted he fondled his adopted nine-year-old daughter over and under her clothing. After he pled guilty, he served nine years and two months for his offenses.

Becher told the district court that while in prison he had completed all required treatment programs. Becher testified that the treatment programs helped him learn a lot about empathy and anger, as well as resentments he had from his childhood. Becher stated he was able to openly discuss his actions which led to his convictions and stated that his victim is still a victim even today.

Becher testified that he does not have any desire to reoffend, is mentally stable, has a great support system, and knows how to deal with stress and depression. Since his release from prison, Becher stated he has not committed any criminal offenses nor violated the requirements of his sex offender registration.

Becher told the district court he had a history of depression and mental health treatment that predated his offenses. He indicated that he had no further treatment upon his release from prison but had developed a support network through biblical support groups. As to triggers, Becher admitted he would get angry while driving his truck if automobile drivers tried to make him stop on a dime on the road.

As to negative impacts of registration, Becher stated that there were limited places where he could live. Becher told the court, however, that he recently purchased a home in Dubuque. Becher also noted that he had to report if he engaged in travel and, as a result, he did not travel much. He and his fiancée planned to honeymoon at Okoboji after their marriage.

2. *Bateman.* Ed Bateman worked with Becher when he was in prison and is now a close friend. Bateman told the district court he had

worked with many persons in prison and that he had no doubt that Becher would not reoffend.

**D. District Court Ruling.** The district court denied Becher's application. It noted that Becher was assessed at Level II on the STATIC-99R, which is described as "below average." The district court noted that a Level II offender "would be higher risk than nonoffenders, but lower risk than typical offenders." The district court further noted that at Level II, "[i]t is expected that . . . offenders would have some criminogenic needs, but that these life problems would be few and transient."

The district court noted that the registration requirements have not significantly affected Becher's life. Although Becher testified it was hard to find a place to live, Becher nonetheless had purchased a home in Dubuque. When he traveled, the district court noted, Becher had been able to check in with local authorities as required by his registration status.

The district court noted that Becher had not received a stipulation from DCS. The district court noted, however, that the lack of a stipulation does not "end the analysis" as under Iowa Code section 692A.128(6), stipulation is not mandatory. Yet, the district court later noted that the record does not contain such a stipulation, suggesting its absence was a factor in the district court's analysis.

## II. Standard of Review.

Under Iowa Code section 692A.128 a district court may consider modification of a sex offender's registry requirement when certain mandatory criteria are met. Determining whether the mandatory criteria are met and any other questions of interpretation of section 692A.128 are reviewed for correction of errors at law. *See State v. Iowa Dist. Ct.*, 843

N.W.2d 76, 79–80 (Iowa 2014); *Schaefer v. Putnam*, 841 N.W.2d 68, 74 (Iowa 2013).

After the district court determines that the threshold requirements are met, the district court "may" grant modification. Iowa Code § 692A.128(5). The word "may" ordinarily vests the trial court with discretion. *See, e.g., State v. Adams*, 554 N.W.2d 686, 690 (Iowa 1996) ("The use of the word 'may' shows the legislature's intention to confer a discretionary power, not to impose a requirement."); *see also* Iowa Code § 4.1(30)(*c*) ("The word 'may' confers a power."). "A court abuses its discretion when its ruling is based on grounds that are unreasonable or untenable." *In re Tr. #T–1 of Trimble*, 826 N.W.2d 474, 482 (Iowa 2013). "A ruling is clearly unreasonable or untenable when it is 'not supported by substantial evidence or when it is based on an erroneous application of the law.'" *In re Marriage of Kimbro*, 826 N.W.2d 696, 698–99 (Iowa 2013) (quoting *In re Marriage of Schenkelberg*, 824 N.W.2d 481, 484 (Iowa 2012)).

**III. Discussion.**

**A. Legal Framework for Modification Applications.** The parties dispute the proper legal approach to modification applications under Iowa Code section 692A.128. In the companion case of *Fortune v. State*, ___ N.W.2d___ (Iowa 2021), we laid out in detail the proper approach to be used by district courts in assessing modification applications. Our discussion in *Fortune* is incorporated herein by reference.

**B. Positions of the Parties.** Like Fortune, Becher argues that although Iowa Code section 692A.128 allows the district court to use discretion in its decision to modify registration requirements, the exercise of district court discretion must be informed by the mandatory statutory criteria provided in Iowa Code section 692A.128(2)(*a*)–(*e*). Specifically, Becher notes that the threshold criteria of successful completion of sex

offender treatment, time on the registry, and a low-risk evaluation are all oriented toward determining risk of reoffense.

Further, Becher relies on our decision in *In re A.J.M.*, 847 N.W.2d 601 (Iowa 2014). In *In re A.J.M.*, we considered the appropriate standards for a district court to apply when considering whether to waive the sex offender registration requirements for juvenile offenders under Iowa Code section 692A.103(3). *In re A.J.M.*, 847 N.W.2d at 604–07. Becher asserts that in *In re A.J.M.*, we established that in considering whether to waive the sex offender registration requirements for a juvenile, the focus should be on the juvenile's risk of reoffending. *Id.* at 605–07. In *In re A.J.M.*, we noted,

> [I]t is important to recognize it is possible for any juvenile sex offender to reoffend. Yet, the mere possibility of reoffending does not preclude waiver or subsequent modification. The standard intended by our legislature is built on a likelihood of reoffending. This means the risk of reoffending would be "probable or reasonably to be expected."

*Id.* at 606 (quoting *In re Foster*, 426 N.W.2d 374, 377 (Iowa 1988)). Becher invites us to utilize the same approach in this case involving adult modification of sex offender registration requirements.

Becher then proceeds to challenge specific features of the district court's ruling in this case. Becher claims, for instance, that the district court erred in applying a "persuasive reason" standard that used Becher's history of compliance as a negative factor in the analysis. Becher asserts that successful management of one's life to ensure compliance with registration should not be a strike against an applicant.

Becher further notes that the district court erroneously relied upon the lack of a stipulation from DCS. Becher points out that he was not under supervision, and thus Iowa Code section 692A.128(2)(*e*) does not apply.

Becher also asserts that the district court in denying modification improperly cherry-picked his score on the STATIC-99R. While the STATIC-99R score alone did place Becher in the below-average risk category, the evaluation expressly stated that this score did not take into account the time Becher had been in the community without reoffending. Becher notes that when ten years of elapsed time outside of prison without reoffending is considered, the adjusted STATIC-99R score becomes very low risk.

Finally, Becher claims that the district court improperly considered the nature of the offense. Becher asserts that all sex crimes are heinous. Further, Becher notes that the legislature did not exclude any type of crime from the modification provision.

The State responds by asserting that the likelihood of reoffense is not the sole criteria for the exercise of discretion under the statute. With respect to *In re A.J.M.,* the State stresses that case involved the waiver of registration, not a modification, and involved a juvenile offender, not an adult offender. According to the State, the district court gave appropriate consideration not only to Becher's risk assessment but also to the underlying facts of the criminal offense and the lack of a persuasive reason for the modification.

With respect to the district court's treatment of the STATIC-99R score, the State argues that the district court order was supported by the record evidence that the STATIC-99R score, which never changes, showed a below-average risk.

On the question of the lack of a stipulation from DCS, the State simply observes that such a stipulation is not required under the statute when the offender is not under supervision. The State makes no further argument on this point.

**C. Discussion.** We first consider the application of *In re A.J.M.* to this case. It is true, as the State indicates, that the case involved the waiver of registration for a juvenile, not the modification of registration for an adult. Yet we think that *In re A.J.M.* generally stands for the proposition that the exercise of discretion by district courts regarding waiver and modification provisions of sex offender registration statutes should focus on the risk of reoffense and the ongoing need for registration to protect public safety—and not on other factors. To that extent, we agree with Becher.

We do not agree, however, that under the terms of Iowa Code section 692A.128, the standard for modification of sex offender registration for adults is whether an offender is "probable or reasonably to be expected" to reoffend, as is the case for waiver of registration for juveniles. *In re A.J.M.*, 847 N.W.2d at 606 (quoting *In re Foster*, 426 N.W.2d at 377). There is a difference between juveniles and adults. Recognizing that difference, the legislature has made it clear that in order for *adults* to qualify for a modification of registration, an offender must be classified as low risk using standard validated assessment tools. Iowa Code § 692A.128(2)(*c*). The legislature's selection of low risk as the proper standard to be applied with respect to adults differs from our approach in *In re A.J.M.* Low risk, of course, does not mean *no risk*, and the teaching of *In re A.J.M.* that the mere possibility of reoffense cannot be considered determinative is sound. *See also Fortune*, ___ N.W.2d at ___. But the risk analysis applied by the district court must be consistent with the requirement that an offender be considered low risk under applicable validated assessment tools.

We now turn our discussion to specifics of the district court's order. Becher challenges the district court's treatment of the STATIC-99R score. Narrowly, the State is correct in its assertion that Becher scored below-

average on that metric. But the context is missing. The DCS evaluation specifically reviewed relevant literature on the STATIC-99R. The evaluation itself noted that the STATIC-99R assessment was valid at the date of release from prison and did not take into account time in the community without reoffense. The DCS evaluation observes that if adjusted for time in the community without reoffense, the STATIC-99R score puts Becher in the very low-risk category.

We think the district court abused its discretion by not putting Becher's STATIC-99R score into proper context. The State, while noting that the district court's observation was technically accurate, does not defend the failure of the district court to recognize the adjustment to the STATIC-99R contained in Becher's evaluation. The State contends, rightly we think, that the district court is not bound by an evaluation that determines that an offender, like Becher, is at low risk to reoffend. But it is weighty evidence on the modification issue that should not be evaluated out of its proper context.

We next consider the district court's reliance on the absence of a stipulation from DCS approving of a modification of the registration requirement. Such a stipulation makes sense when the offender is under the department's supervision. *See* Iowa Code § 692A.128(6). When an offender is under such supervision, the department is in a position to have a good working knowledge of the offender and his adjustment to life outside of prison. But here, since his release from prison, Becher has never been under supervision. Instead, Becher has been "off paper." The State in its brief makes a passing reference to the fact that the stipulation from DCS was not required but makes further argument in support of consideration of its absence in Becher's case. We think it clear that the

failure to obtain a stipulation cannot be a factor in denying Becher's modification. The district court erred in giving it any consideration.

The district court also emphasized that Becher has adjusted well to the registration regime, and as a result, presented no persuasive reason for a modification. On the undisputed evidence, Becher has achieved ten years of compliance, is gainfully employed as a truck driver within the registration regime, and has managed to find a house in Dubuque that is not located within a prohibited geographic location for Becher as a tier III sex offender.

We do not agree, however, that successful adjustment to the sex offender registration requirements is a factor for denying modification. Indeed, the mandatory requirement in Iowa Code section 692A.128(2)(*a*) that an offender experience a period of time in the community without reoffense suggests that successful adjustment over time is a *positive factor* that reduces the need for ongoing compliance with the registration requirements. The same notion arises from the DCS evaluation, which notes the adjustment to the STATIC-99R based on time in the community without reoffense. If we penalize an offender seeking modification who has a history of failure to comply with the sex offender registration requirements, can we also penalize an offender for *successfully* complying with the same requirements over a ten-year period? We think not.

Finally, we consider whether the district court properly considered the underlying nature of the crime. As noted in *Fortune*, we do not conclude that the underlying nature of the crime can never be considered by the district court. But care must be taken to ensure that registration is not punishment. On remand, any consideration of the underlying nature of the crime must be linked to the public safety purposes of the statute and not to a desire to punish.

In sum, we find that the district court erred in its consideration of the STATIC-99R evaluation, consideration of the lack of stipulation from DCS, and penalizing Becher for his years of successful adjustment to sex offender registration.

**IV. Conclusion.**

For the above reasons, we vacate the ruling of the district court in this case and remand the matter to the district court for further consideration consistent with this opinion.

**REVERSED AND REMANDED.**