In the Interest of T.D., A Child, State of Iowa, Appellant.

No. 3–6890.7.

Court of Appeals of Iowa.

May 31, 1983.

Thomas J. Miller, Atty. Gen. and Brent Hege, Asst. Atty. Gen., for appellate State.

Charles L. Corbett of Corbett, Anderson, Corbett & Daniels, Sioux City, for appellee child.

Considered by OXBERGER, C.J., and DONIELSON, SNELL, and SCHLEGEL, JJ.

OXBERGER, Chief Judge.

In this juvenile delinquency proceeding, the State appeals with permission from a juvenile court order refusing to waive the juvenile court's jurisdiction to permit a criminal trial. The State contends that it produced sufficient evidence to support the requested waiver of juvenile court jurisdiction under the criteria for waiver stated in Iowa Code sections 232.45(6) and (7). We affirm.

I. Scope of Review

Our review in this case is de novo. Iowa Code section 232.133 (1983). However, this does not mean that we reach our own determination on the same evidence, for, as the supreme court held in *In Interest of Matzen,* 305 N.W.2d 479, 482 (Iowa 1981), a review in that sense would eliminate the element of trial court's discretion that the legislature built into section 232.46 when it provided the court "may suspend the proceedings . . . [and] enter a consent decree." [Citation.] In these circumstances our role requires a de novo review to the extent of examining all the evidence to determine whether the court abused its discretion. [Citation.] ("[W]e have nothing to review de novo other than whether the juvenile court judge abused the discretion granted under the provisions of Code chapter 232. . . .").

Section 232.45(6) provides that the juvenile court may waive its jurisdiction and transfer a child to adult criminal court.

We hold that the scope of review of the appellate court is limited to a determination of whether the juvenile court abused its discretion in determining whether to waive the juvenile court's jurisdiction, but does not go so far as to permit the appellate

court to substitute its own judgment for that of the juvenile court.

## II. Waiver of Juvenile Court Jurisdiction

█ The State argues that it was error for the juvenile court to deny the State's motion for waiver of the juvenile court's jurisdiction in this matter, since the facts were sufficient to satisfy the requirements of Iowa Code sections 232.45(6) and (7).

Section 232.45(6) provides that if certain conditions are met, "the court *may* waive its jurisdiction." (Emphasis added.) This language clearly gives the juvenile court broad discretion to determine whether it ought to waive jurisdiction when those conditions are satisfied. Section 232.45(7) confers very broad discretion upon the court to consider such factors as it deems relevant in determining whether it ought to waive jurisdiction in a particular case.

The State believes that on de novo review, we ought to find that the juvenile court abused its discretion when it refused to waive its jurisdiction. We are not persuaded that the juvenile court abused its discretion in denying the State's motion. To be sure, this juvenile's actions were violent, destructive, and damaging to the victim. The core of the issue is the most appropriate treatment to be accorded this juvenile in attempting to rehabilitate her and to protect society against further violations by her. The State believes that these interests can best be assured by the juvenile court's waiver of jurisdiction so that the juvenile, who was only two months short of attaining the age of eighteen, could be prosecuted as an adult offender.

Jean Severson, juvenile deputy probation officer, testified that group homes and the training school were not dispositional options since the child was eighteen. The State offered no evidence that out-of-home placement was necessary in this case.

Officer Severson testified that probation was the only dispositional option and that if probation didn't work, juvenile court had no leverage because the child was now eighteen. However, the State offered no evidence to indicate that probation would not

work. Furthermore, the probation period could last for three years. Section 232.53(2) The Code:

> In the case of an adult within the jurisdiction of the court under the provisions of section 232.8(1) the dispositional order shall automatically terminate one year after the last date upon which jurisdiction *could* attach. (emphasis supplied)

Section 232.8(1)(b) The Code provides that jurisdiction *could* attach two years after the commission of the act. The offense charged is more than a simple misdemeanor.

During the three-year probation period the juvenile court has at its disposal a formidable array of remedies for T.D.'s rehabilitation, including work assignments and restitution to her victim. Section 232.-52(2)(e) of the Code permits the court to transfer guardianship of T.D. to the commissioner of the department of social services for placement in a facility other than the training school. Section 232.52(2)(f) permits the court to commit T.D. to a mental health institute or other appropriate facility for purpose of treatment of a mental or emotional condition upon a proper showing. The State offered no evidence that these options would not be feasible. Nor was any evidence offered that T.D.'s mother was unwilling or incapable of aiding a probation program.

We conclude that the trial court did not abuse its discretion in denying the State's motion to transfer T.D. to adult court.

AFFIRMED.

All Judges concur except DONIELSON, J., who dissents.

HAYDEN, J., takes no part.

DONIELSON, Judge (dissenting).

I respectfully dissent.

Under our de novo review, I believe the elements of sections 232.45(6) and (7) are clearly satisfied. T.D., who was within two months of turning age eighteen at the time of the assault, had committed two prior assaults on the same victim. In the third assault, which formed the basis of this action, the victim was severely injured. The

record shows that T.D. met the victim as the victim walked to the men's dormitory on the Morningside College campus. They had known each other for some time. T.D. verbally threatened the victim and then struck her in the temple with her fist. The victim kicked T.D. in the thigh and fell to the ground on the ice. T.D. then began kicking the victim as she was on the ground. The third kick was to the victim's face, which broke her nose and fractured her cheekbone. The victim was apparently bleeding a great deal but T.D. continued to kick the victim eight or ten more times. T.D. also pulled the victim's hair and yanked her head back and forth. A dormitory resident, and friend of the victim, came outside and pulled T.D. away from the victim. The victim was then taken to the hospital.

From the record it is apparent that the victim lost a lot of blood and experienced a great deal of pain. Her injuries were severe and extensive—she had two fractures of the nose, neck injuries requiring her to wear a neck brace, a triangular fracture on her left cheekbone, and a hearing loss in her left ear.

The waiver and investigation report recommended waiver of juvenile court jurisdiction. T.D. reached the age of majority two months prior to the waiver hearing. She had received her high school equivalency and had just had a baby. She was living with her mother and caring for her baby at the time of the hearing. The juvenile court ordered waiver of jurisdiction.

Upon rehearing and after hearing testimony, the court concluded that there was probable cause to believe that T.D. did commit the assault. The court then stated its concerns as follows: "I'm a bit torn between two thoughts. Number one is the weighing of the seriousness of the assault against the fact that there is no prior juvenile record that has been incurred; in other words, that she has never before been brought before or called to the attention of juvenile authorities."

Section 232.45(7)(a) and (b) set forth, as factors to be considered in deciding whether to waive juvenile court jurisdiction, both the seriousness of the crime and the prior juvenile record. In addition, section 232.-45(7)(c) requires the court to consider

c. The programs, facilities and personnel available to the juvenile court for rehabilitation and treatment of the child, and the programs, facilities and personnel which would be available to the court that would have jurisdiction in the event the juvenile court waives its jurisdiction so that the child can be prosecuted as an adult.

In its ruling the court noted that because T.D. had no prior juvenile record "[i]t follows, therefore, that it cannot now be said that the child could not or would not respond to rehabilitation efforts within the juvenile system when such efforts have never even been attempted." In making this ruling the court did not consider sections (b) and (c) separately, but *assumed* that (c) follows from (b). This assumption is incorrect.

T.D. had committed prior violent acts, but just had not been caught or charged. The fact that T.D. has not previously appeared before juvenile authorities does not mean that juvenile treatment programs would benefit her in the instant case. The testimony of the deputy probation officer indicated that, because T.D. had already reached her majority, the juvenile court resources were limited and that, if juvenile probation were ordered, there would be no remedy for potential probation violations. There can be no question but that the alternatives available in the adult system are far greater in number and thus provide both T.D. and the community with a better chance of T.D.'s rehabilitation.

Considering the violent nature of T.D.'s acts upon the victim, the limited programs available for T.D.'s rehabilitation, and the recommendations of the juvenile court judge and the juvenile probation officer, I would reverse the lower court and order juvenile court jurisdiction waived.