# IN THE SUPREME COURT OF IOWA

No. 21–1594

Submitted September 13, 2023—Filed October 13, 2023

**STATE OF IOWA,**

    Appellee,

vs.

**DAGGER LE ERDMAN,**

    Appellant.

---

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Washington County, Myron L. Gookin, Judge, and Daniel P. Kitchen, District Associate Judge.

The defendant seeks further review of a court of appeals decision affirming the juvenile court's waiver of jurisdiction and his conviction for second-degree sexual abuse. **DECISION OF COURT OF APPEALS AND JUVENILE COURT AND DISTRICT COURT JUDGMENTS AFFIRMED.**

Christensen, C.J., delivered the opinion of the court, in which all justices joined.

Denise M. Gonyea (argued) of McKelvie Law Office, Grinnell, for appellant.

Brenna Bird, Attorney General, and Genevieve Reinkoester (argued), Assistant Attorney General, for appellee.

**CHRISTENSEN, Chief Justice.**

The defendant committed second-degree sexual abuse, a class "B" felony, around one month after his seventeenth birthday. The State filed a delinquency petition in juvenile court against the defendant and a motion to waive jurisdiction to allow for the defendant's prosecution as an adult. Based mainly on his status as a first-time offender with no criminal history, the defendant advocated for the juvenile court to maintain its jurisdiction. His attempt was unsuccessful, and he was prosecuted and convicted of second-degree sexual abuse as an adult in district court.

We transferred the defendant's appeal to the court of appeals, which affirmed the waiver decision and the defendant's conviction. On further review, we also affirm the juvenile court's waiver order because we have no reason to believe it abused its discretion based on the arguments presented on appeal. Likewise, we reject the defendant's claim that there was insufficient evidence to support his conviction.

## I. Background Facts and Proceedings.

On May 31, 2019, seventeen-year-old Dagger Erdman put his hand down nine-year-old Z.E.'s shorts and touched her vagina while they were watching television. Z.E. testified Erdman "was, like, patting, and then he was, like touching around" her vagina and then put his hand down the front of his pants. Z.E. was afraid and made up an excuse to leave. Erdman asked her if she was going to tell anyone. Although she said she would not, Z.E. reported it to her mother that night, which led to a police investigation.

During the investigation, Investigator Chad Ellis conducted two recorded interviews with Erdman. In the first interview, Erdman initially denied touching Z.E., even by accident. But then Investigator Ellis explained the concept of touch DNA to Erdman and asked, "So, why would there be, if we were to test [Z.E.'s]

clothes, would your touch DNA be on there?" Erdman stated, "There could be a chance by accident, but not in[side] the shorts," like when he was trying to tag her stomach and hit the wrong part of her body. During his second interview, Erdman confessed that he put his hand inside Z.E.'s shorts and made contact with her skin under the shorts. He drew a picture to show how far his hand went down Z.E.'s shorts and summarized that he started touching Z.E. outside her shorts before placing his hand inside her waistband.

On September 13, the State filed a delinquency petition charging Erdman with one count of second-degree sexual abuse—a class "B" felony—in violation of Iowa Code sections 709.1(3), 709.3(1)(b), 709.3(2), and 903B.1 (2019), along with a motion to waive jurisdiction and prosecute Erdman as an adult. This was approximately seven months before Erdman's eighteenth birthday. A juvenile court officer (JCO) filed a waiver investigation report, recommending waiver to prosecute Erdman as an adult. The JCO reasoned the sex offender treatment Erdman needed "is intense with often at least weekly meetings and generally is 6 months minimum in duration. This Officer does not see sufficient time to rehabilitate if Mr. Erdman was admitting to the [o]ffense, which as of July, he was not."

On October 22, the JCO reiterated this during her testimony at the waiver hearing. She also opined that Erdman did not meet the placement criteria for the state training school under Iowa Code section 232.52(2)(e), which she testified was the only available facility that could keep Erdman after he turned eighteen. Similarly, counsel for Erdman "believe[d]" Erdman would not qualify for the state training school "under those circumstances," but he "maintain[ed] that there are . . . programs available involving intense treatment for adults in the JCO's office that [Erdman] could take advantage of once he is on probation."

At no time did the State or Erdman challenge the juvenile court's jurisdiction or authority.

The juvenile court issued an order waiving jurisdiction the same day. It noted it had considered the factors for waiver under the Iowa Code[1] and concluded there were not reasonable prospects for rehabilitating Erdman if the juvenile court retained jurisdiction. It also found that waiver "would be in the best interests of the child and the community." The ruling primarily focused on the opportunities for treatment and rehabilitation, or lack thereof, in juvenile court. The juvenile court wrote,

> The evidence reflects, however that should the child be adjudicated and disposition was entered, the State Training School is not an option. Further, there is insufficient time to have reasonable prospects of rehabilitating the child between this date and April, 2020. Even if the child should be adjudicated to have committed Sex Abuse 2nd degree, evaluated for programming, and eventually admitted into a program, there is no reasonable prospect of rehabilitation prior to the court losing jurisdiction and the ability to enforce treatment.

The case proceeded to a jury trial in the district court in July 2021, which resulted in a guilty verdict. The district court sentenced Erdman to a term of incarceration not to exceed twenty-five years with no parole eligibility until he had served 77% of his sentence; the sentence was suspended and Erdman was placed on probation for five years. Erdman filed a timely notice of appeal, and we transferred the case to the court of appeals. A split court of appeals affirmed his conviction, with one dissenting judge who would have reversed the juvenile court's waiver order. We granted Erdman's application for further review.

---

[1]The juvenile court's order stated it had considered the factors under Iowa Code section 232.45(7), which would not apply to this case based on Erdman's age, but it correctly listed the applicable factors under Iowa Code section 232.45(8) in its reasoning. We assume its reference to section 232.45(7) was a typo given the juvenile court's reliance on section 232.45(8) in its analysis.

## II. Standard of Review.

Because Erdman's challenge to the juvenile court's waiver decision involves the juvenile court's statutory discretion under Iowa Code section 232.45, we review the decision for an abuse of discretion. *In re A.J.M.*, 847 N.W.2d 601, 604 (Iowa 2014). We review Erdman's sufficiency-of-evidence claim for the correction of errors at law and are bound by the jury's verdict if the evidence is "sufficient to convince a rational trier of fact the defendant is guilty beyond a reasonable doubt." *State v. Mong*, 988 N.W.2d 305, 312 (Iowa 2023) (quoting *State v. Jones*, 967 N.W.2d 336, 339 (Iowa 2021)).

## III. Analysis.

Erdman challenges the juvenile court's waiver decision that led to his prosecution as an adult and the sufficiency of the evidence supporting his conviction. We will discuss the juvenile court's waiver decision in-depth below, but Erdman's claim of insufficient evidence warrants little analysis because he is simply arguing that "the only evidence against [him] was the testimony of the complaining witness." Claiming the victim's testimony alone "is not credible enough to convince a rational fact finder of his guilt beyond a reasonable doubt is unavailing for sufficiency of the evidence purposes." *State v. Donahue*, 957 N.W.2d 1, 11 (Iowa 2021). Nevertheless, the jury heard Erdman's recorded confession to Investigator Ellis that he had put his hand down Z.E.'s shorts, in addition to Z.E.'s testimony, so a rational fact finder could determine beyond a reasonable doubt that Erdman committed second-degree sexual abuse based on the evidence presented. *See Mong*, 988 N.W.2d at 312.

Erdman's waiver claim is not as simple. Erdman was charged with sexual abuse in the second degree, which is a forcible felony. Iowa Code § 702.11(1) ("A 'forcible felony' is any felonious child endangerment, assault, murder, sexual

abuse, kidnapping, robbery, human trafficking, arson in the first degree, or bur-glary in the first degree."); *see also id.* § 709.3(1)(*b*), (2). Iowa Code section 232.8(1)(*c*) provides, "[V]iolations which constitute a forcible felony are excluded from the jurisdiction of the juvenile court and shall be prosecuted as otherwise provided by law unless the district court transfers jurisdiction of the child to the juvenile court upon motion and for good cause pursuant to section 803.6." Thus, Erdman's case should have commenced in district court instead of juvenile court.

The district court would then have had the option to "direct a juvenile court officer to provide a report regarding whether the child should be transferred to juvenile court for adjudication and disposition as a juvenile" and "hold a hearing on whether the child should be transferred [to juvenile court]." *Id.* § 803.6(1)–(2). In the district court, Erdman would have had the burden to show good cause for a reverse waiver to juvenile court. *State v. Terry*, 569 N.W.2d 364, 367 (Iowa 1997). Consequently, Erdman actually benefited from the procedural mishap be-cause the waiver hearing in juvenile court placed the burden on the State to establish the elements necessary to support waiver. Iowa Code § 232.45(6)(*c*).

Further, although Erdman's case should have commenced in district court, the juvenile court was not without subject matter jurisdiction over Erdman's criminal proceedings because the juvenile court and the district court are separate dockets within the same court of original jurisdiction in our unified court system. *State v. Emery*, 636 N.W.2d 116, 121–22 (Iowa 2001); *see also Woodbury Cnty. Att'y v. Iowa Dist. Ct.*, 448 N.W.2d 20, 21 (Iowa 1989). "Jurisdiction," as it is referenced in Iowa Code sections 232.8 and 232.45, refers to the court's authority to adjudicate the charges, not its subject matter jurisdiction over such cases. *Emery*, 636 N.W.2d at 123. Accordingly, "the lack of a proper transfer from [the] juvenile court is simply a defect in the district

court's authority that can be waived." *Id.* Neither party challenged the juvenile court's authority, so they waived that defect here. Therefore, we examine Erdman's challenge to the juvenile court's waiver decision as if it was filed in the proper docket.

The juvenile court may waive jurisdiction over a child to allow for the child's prosecution as an adult if three elements apply. *See* Iowa Code § 232.45(6). Erdman does not challenge the juvenile court's determination that he met the first two factors—namely, that he is fourteen years of age or older and that probable cause existed to believe he committed a public offense. *Id.* § 232.45(6)(*a*)–(*b*). The dispute lies in whether the juvenile court properly evaluated all factors in considering the third element, which requires the juvenile court to determine

> that the state has established that there are not reasonable prospects for rehabilitating the child if the juvenile court retains jurisdiction over the child and the child is adjudicated to have committed the delinquent act, and that waiver of the court's jurisdiction over the child for the alleged commission of the public offense would be in the best interests of the child and the community.

*Id.* § 232.45(6)(*c*).

Iowa Code section 232.45(8) contains a nonexhaustive list of factors that the juvenile court must consider in deciding that element, including:

> *a.* The nature of the alleged delinquent act and the circumstances under which it was committed.

> *b.* The nature and extent of the child's prior contacts with juvenile authorities, including past efforts of such authorities to treat and rehabilitate the child and the response to such efforts.

> *c.* The programs, facilities and personnel available to the juvenile court for rehabilitation and treatment of the child, and the programs, facilities and personnel which would be available to the court that would have jurisdiction in the event the juvenile court waives its jurisdiction so that the child can be prosecuted as an adult.

Erdman contends the juvenile court focused "exclusively on the factor that there was insufficient time for Erdman to attend the State Training School if he were to be adjudicated" without considering the enumerated factors in Iowa Code section 232.45(8)(*a*)–(*c*). That is simply not the case. The parties presented evidence addressing the necessary factors at the waiver hearing, and the juvenile court's written order listed those factors essentially verbatim as its reasons for waiver before elaborating on the available rehabilitation and treatment options if Erdman were prosecuted as a juvenile or an adult.

The best practice would be for the juvenile court to articulate its analysis of those factors more thoroughly than it did, but Iowa Code section 232.45(10) does not mandate any degree of specificity in requiring the juvenile court to "make and file written findings as to its reasons for waiving its jurisdiction." *Cf. State v. Wilbourn*, 974 N.W.2d 58, 67 (Iowa 2022) (noting sentencing courts must state their reasons for selecting a particular sentence on the record, but it is not obligated to explain why it rejected particular sentencing options). Ultimately, we take the juvenile court's statement that it considered all of the necessary factors "at face value." *State v. Damme*, 944 N.W.2d 98, 107 (Iowa 2020) (quoting *State v. Sailer*, 587 N.W.2d 756, 763 (Iowa 1998)). This is especially so given the "very broad discretion" vested in the juvenile court to consider the factors as it deems relevant. *In re J.J.A.*, 580 N.W.2d 731, 741 (Iowa 1998) (quoting *In re T.D.*, 335 N.W.2d 638, 639 (Iowa Ct. App. 1983)). A juvenile court's use of this discretion to weigh the factors differently than Erdman would have does not amount to an abuse of discretion. *See State v. Tesch*, 704 N.W.2d 440, 449 (Iowa 2005) ("It is the essence of the court's duty to evaluate conflicting evidence in making the judgment whether the juvenile will be better off in adult court.").

Moreover, the juvenile court's analysis in the waiver order focused on the parties' primary dispute at the hearing: whether there were reasonable prospects

for rehabilitating Erdman if the juvenile court kept jurisdiction based on "[t]he programs, facilities and personnel available" to it. Iowa Code § 232.45(8)(*c*). At the time of the hearing, Erdman was six months shy of his eighteenth birthday. This posed problems for the juvenile court, as the JCO testified that she based her waiver recommendation in part on the fact that there would not be juvenile placement opportunities available to Erdman once he turned eighteen. She explained,

> In a sex abuse case, normally a child is evaluated and then recommended for treatment. The treatment is an intense treatment that lasts at least six months; and at this point without an adjudication or a conviction, we don't have six months in order to provide that treatment if the evaluation was even done.

In response, Erdman advocated for placement at the state training school, observing that Iowa Code section 232.53(2) provides for the automatic termination of dispositional orders one year and six months after the disposition date if they are entered "subsequent to the child attaining the age of seventeen years and prior to the child's eighteenth birthday." The parties' discussion with the juvenile court proceeded to focus on whether Erdman met the conditions required under Iowa Code section 232.52(2)(*e*)(1)–(4) to qualify for placement at the state training school. That section authorizes the juvenile court to enter

> [a]n order transferring the . . . child, subject to the continuing jurisdiction and custody of the court for the purposes of section 232.54, to the director for purposes of placement in the state training school or other facility, provided . . . the court finds any three of the following conditions exist:
>
> (1) The child is at least fifteen years of age and the court finds the placement to be in the best interests of the child or necessary to the protection of the public.
>
> (2) The child has committed an act which is a crime against a person and which would be an aggravated misdemeanor or a felony if the act were committed by an adult.

(3) The child has previously been found to have committed a delinquent act.

(4) The child has previously been placed in a treatment facility outside the child's home or in a supervised community treatment program established pursuant to section 232.191, subsection 4, as a result of a prior delinquency adjudication.

*Id.*

But when pressed further on Erdman's eligibility under those conditions, counsel for Erdman conceded,

I don't believe he would qualify under those circumstances, no, but I do still maintain that there are -- and I would -- I've not had a chance to thoroughly look into it -- that there are programs available involving intense treatment for adults in the JCO's office that he could take advantage of once he is on probation.[2]

Erdman's belief about the existence of other programs aside, the JCO testified that the state training school was the only placement facility available to

---

[2]Although Erdman did not meet at least three of the four conditions for placement under Iowa Code section 232.52(2)(*e*)(1)–(4), he was eligible for placement at the state training school. The statute allows the juvenile court to enter

[a]n order transferring the custody of the child, subject to the continuing jurisdiction and custody of the court for the purposes of section 232.54, to the director for purposes of placement in the state training school or other facility, provided that the child is at least twelve years of age and the court finds the placement to be in the best interests of the child or necessary for the protection of the public, and that the child has been found to have committed an act which is a forcible felony, as defined in section 702.11.

*Id.* § 232.52(2)(*e*). Erdman qualified because he was over twelve years of age and committed a forcible felony.

As the appellant, Erdman "must file a brief and is limited to the issues raised in that brief." *King v. State*, 818 N.W.2d 1, 12 (Iowa 2012). The issues Erdman raises in his brief do not include a claim that the juvenile court wrongly determined he was ineligible for the state training school. Instead, he merely argues the juvenile court abused its discretion by "focus[ing] exclusively on the factor that there was insufficient time for Erdman to attend the State Training School if he were to be adjudicated . . . without considering all the mandatory factors set out in § 232.45(8)[(*a*)–(*c*)]." In fact, nobody challenged the juvenile court's ruling regarding Erdman's state training school eligibility until we questioned the attorneys on it during oral argument. By that point, it was too late to challenge it. *See, e.g.*, *State v. Warren*, 955 N.W.2d 848, 860 (Iowa 2021) ("[W]e do not decide or consider arguments raised for the first time during oral argument."). It is not our role to raise and decide new issues on appeal.

juvenile court services that could keep Erdman past his eighteenth birthday. Nevertheless, she explained that "it's not usually recommended as the first placement for anyone." A JCO's opinion is "entitled to considerable weight" at waiver hearings, and the juvenile court was entitled to take the JCO at her word—especially in the absence of any evidence to the contrary about the availability of other placements for Erdman. *State v. Greiman*, 344 N.W.2d 249, 251 (Iowa 1984) ("Here, there were only twenty months in which any rehabilitation would have to be accomplished. The juvenile probation officer, whose opinion should be entitled to considerable weight, noted that fact in recommending waiver of jurisdiction."); *see also In re R.J.*, No. 15–1475, 2016 WL 1133889, at *2 (Iowa Ct. App. Mar. 23, 2016) ("Considerable weight attaches to a juvenile court officer's opinion."). We affirm the juvenile court's waiver decision because it was supported by the evidence and reasonable based on the information before it.

**IV. Conclusion.**

For these reasons, we affirm the juvenile court's waiver order and Erdman's subsequent conviction in the district court for second-degree sexual abuse as an adult.

**DECISION OF COURT OF APPEALS AND JUVENILE COURT AND DISTRICT COURT JUDGMENTS AFFIRMED.**